11 P.3d 375 (2000)
In the Matter of The Worker's Compensation Claim of: Dinesh P. SHETH, Appellant (Petitioner Employee/Claimant),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent Objector/Defendant).
No. 99-271.
Supreme Court of Wyoming.
September 29, 2000.
*376 Representing Appellant: Stan Decker Cannon of Greenhalgh, Beckwith, Lemich & Stith, Rock Springs, WY. Argument by Mr. Cannon.
Representing Appellee: Gay Woodhouse, Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Senior Assistant Attorney General. Argument by Mr. Haggerty.
Before LEHMAN, C.J., and THOMAS, MACY,[*] GOLDEN, and HILL, JJ.
LEHMAN, Chief Justice.
A hearing examiner denied Dinesh P. Sheth's claim for worker's compensation benefits for expenses related to a myocardial infarction. Sheth appeals, claiming the hearing examiner misapplied the statute governing claims for cardiac conditions. Because we conclude the hearing examiner's decision is in accord with law and not arbitrary and capricious, we affirm.

ISSUES
Sheth presents this statement of the issues:
1. Whether the hearing examiner's decision to deny benefits for Mr. Sheth's work related heart attack is contrary to law?
2. Whether the hearing examiner's decision to deny benefits for Mr. Sheth's work *377 related heart attack is unsupported by the substantial weight of evidence?
Appellee, the Wyoming Worker's Compensation Division (Division), articulates this statement of the issues:
I. Was the Hearing Examiner's application of the burden of proof for coronary conditions in accordance with law?
II. Was the denial of benefits supported by substantial evidence and within the Hearing Examiner's discretion?
III. May the Court remand for an automatic award of benefits?

FACTS
This case arises from a heart attack suffered by appellant Dinesh P. Sheth on August 6, 1998. A civil engineer at Indo American Engineering in Rock Springs, Sheth usually spends his workdays in his office performing design work, writing specifications, and putting together proposals for clients. On occasion, he is called upon to perform inspections at building and road construction sites. These inspections usually last one to one-and-a-half hours.
On August 6, 1998, Sheth traveled to Evanston to oversee construction of a Wyoming Department of Transportation salt dome storage facility.[1] Sheth left Rock Springs at 9:00 a.m. and arrived at the construction site around 10:30 a.m. It was a warm day, with temperatures in the 80s. The work objective that day was to position and secure the dome panels. When Sheth arrived, the first row of steel panels was in place on top of an eight-foot concrete wall. The remaining panels were stacked on a flatbed trailer parked in the open garage doorway of the structure. Workmen, utilizing a diesel-powered crane and a gas-powered scissors lift, positioned the panels. Both machines were located inside the dome. Sheth's duties that day included verifying that the panels were properly bolted and properly spaced for expansion purposes. He also took pictures of the construction as it proceeded upward and inward. Sheth spent his entire workday inside the dome facility, except for bathroom breaks. He finished work around 8:30 p.m.
On his trip home, Sheth developed chest pains. He stopped several times to lie down, which seemed to help, and called his wife to advise her of his condition. The next morning, still experiencing chest pains, Sheth sought treatment from his physician, Dr. Randal Moseley, who diagnosed a myocardial infarctiona heart attack. Sheth remained in the Sweetwater County hospital overnight and continued to suffer from chest pains and decreased blood pressure. On August 8, 1998, he was transferred to LDS Hospital in Salt Lake City. Doctors there also diagnosed a myocardial infarction and recommended Sheth undergo an angioplasty procedure. The angioplasty procedure was attempted the same day but proved unsuccessful when the surgeon could not pass the guide wire through Sheth's 100% occluded right coronary artery. Sheth was discharged August 10 and given medication to help him stop smoking.
Sheth continued treatment with Dr. Moseley. During an October 1998 office exam, Sheth raised the possibility that his heart attack may have been caused by exposure to carbon monoxide on the jobsite due to exhaust from the machinery. After considering the possibility, Dr. Moseley opined the workplace exposure to carbon monoxide "may well have been contributory" to Sheth's infarction.
Sheth filed an application for worker's compensation benefits, which the Division denied.[2] Sheth challenged the denial, and a contested case hearing was held June 4, 1999. At the hearing, in addition to testifying on his own behalf, Sheth presented testimony from an industrial hygienist and deposition testimony from two treating physicians, Dr. Moseley and Dr. Revenaugh.
The industrial hygienist, Kenneth White, offered his opinion regarding the carbon monoxide levels in the salt dome storage facility on the day in question. White performed a carbon monoxide exposure evaluation by first estimating the internal volume of the salt *378 dome structure. He then calculated the carbon monoxide emissions of the machinery operated in the structure. Next, White estimated the number of air changes per hour in the dome. Key variables in this estimate were the size of the opening in the roof of the structure, the wind direction, and the position of the garage door opening with respect to the wind. As placement of the panels proceeded upward and inward, the roof opening gradually closed and the number of air changes would go down. In addition, air changes would vary depending on whether the garage doorway was upwind or downwind. Based on his estimates, White opined there were elevated levels of carbon monoxide in the structure on the day in question. However, under cross-examination, White conceded that, given air change variables, he could only guess at carbon monoxide levels in the dome structure.
Sheth's physicians both maintained that, assuming Sheth had been exposed to high levels of carbon monoxide, this exposure was likely a contributing cause of his myocardial infarction. A cardiologist retained by the Division, Dr. Glode, disagreed. Although Dr. Glode admitted it is possible that carbon monoxide exposure can contribute to a myocardial infarction, he asserted it was more likely a number of other factors caused the infarction. Dr. Glode pointed to Sheth's chronic severe coronary disease, low HDL cholesterol level, and habit of smoking two packs of cigarettes a day for twenty years. Dr. Glode opined that, with these factors present, it was just as likely that something other than carbon monoxide exposure caused the heart attack.
Concluding Sheth failed to meet his burden of proof to recover benefits for his cardiac condition, the hearing examiner denied benefits. In addition to finding that Sheth failed to establish the carbon monoxide levels were unsafe, the hearing examiner also found that other risk factors, including Sheth's coronary heart disease, his age (over 45), and his twenty-year smoking habit, were just as likely to have caused Sheth's myocardial infarction. Sheth filed a petition for review with the district court, which, upon Sheth's motion, certified the case pursuant to W.R.A.P. 12.09.

STANDARD OF REVIEW
When reviewing a hearing examiner's decision that a worker's compensation claimant has failed to meet the burden of proof, we apply the following principles:
A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. Martinez v. State ex rel. Wyoming Workers' Compensation Div. 917 P.2d 619, 621 (Wyo.1996). When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of Wyo. Stat. § 16-3-114(c)(ii) (1990). City of Casper v. Utech, 895 P.2d 449, 452 (Wyo.1995). On appeal the complainant . . . has the burden of proving arbitrary administrative action. Knight v. Environmental Quality Council of State of Wyo., 805 P.2d 268 (Wyo.1991); Wyoming Bancorporation v. Bonham, 527 P.2d 432, 439 (Wyo.1974); Marathon Oil Co. v. Welch, 379 P.2d 832, 836 (Wyo.1963); Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, 526 (1957). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. Utech, 895 P.2d at 451, and cases there cited. The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. Wyoming Steel & Fab, Inc. v. Robles, 882 P.2d 873, 875 (Wyo.1994).
Pederson v. State ex rel. Workers' Compensation Div., 939 P.2d 740, 742 (Wyo.1997); see also In re Nissen, 983 P.2d 722, 724-25 (Wyo.1999); Carrillo v. State ex rel. Workers' Safety and Compensation Div., 987 P.2d 690, 692-93 (Wyo.1999). We review rulings on questions of law de novo. In re Wright, 983 *379 P.2d 1227, 1231 (Wyo.1999); In re Pohl, 980 P.2d 816, 819 (Wyo.1999).

DISCUSSION
Sheth's claim for benefits for his cardiac condition falls within the purview of Wyo. Stat. Ann. § 27-14-603(b) (Lexis 1999), which provides:
Benefits for employment-related coronary conditions except those directly and solely caused by an injury, are not payable unless the employee establishes by competent medical authority that:
(i) There is a direct causal connection between the condition under which the work was performed and the cardiac condition; and
(ii) The causative exertion occurs during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee; and
(iii) The acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion.
Because Sheth's coronary condition was not directly and solely caused by an injury, he was required to satisfy the factors enumerated above. In Matter of Desotell, 767 P.2d 998, 1002 (Wyo.1989), we interpreted the cardiac condition statute, then codified at Wyo. Stat. Ann. § 27-12-603(b) (June 1983 Repl.), writing:
Given the way the statute is phrased, the claimant must first prove that the injured employee experienced an "actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment...." Next, and only after proof of the first requirement, the claimant must establish legal causation, by proving a "causative exertion" during the proven period of actual unusual or abnormal stress. Then, the claimant must establish medical causation, by introducing competent medical testimony evidencing a direct causal connection between the causative exertion and the coronary condition. Last, the claimant must introduce evidence showing that the acute symptoms of that coronary condition were manifested within four hours of the causative exertion. State, ex rel. Wyoming Worker's Compensation Division v. Van Buskirk, 721 P.2d 570, 572 (Wyo.1986) first analyzed as a four-part test in Claim of McCarley, 590 P.2d 1333, 1335-336 (Wyo.1979).
Although the cardiac condition statute has been recodified and rearranged since our opinion in Desotell, we reaffirmed this interpretation in State ex rel. Workers' Compensation Div. v. Harris, 931 P.2d 255, 258-59 & fn. 2 (Wyo.1997).
At the contested case hearing, there was little debate that Sheth suffered a myocardial infarction and that the acute symptoms of his cardiac condition were clearly manifested not later than four hours after the alleged causative exertion. Therefore, the question was whether Sheth satisfied the remaining three requirements enumerated in Desotell, "period of employment stress," "causative exertion," and "medical causation." The hearing examiner concluded that Sheth had failed to meet his burden of proof under § 27-14-603(b), writing:
7. The Supreme Court made it clear that the test is an objective test and does not focus on the activities or characteristics of an individual employee. In this case, Sheth must establish that he was exposed to unsafe levels of carbon monoxide which led to his heart attack. Sheth has failed to meet his burden. While there is some evidence that he was exposed to increased levels of carbon monoxide, there is no evidence that the level of carbon monoxide was, in fact, clearly unusual or abnormal. Benefits are therefore denied.
Sheth focuses his complaints on this conclusion, arguing the hearing examiner's decision, contrary to Desotell, impermissibly melds the separate elements of legal causation and "period of employment stress." He contends the question should not be whether the carbon monoxide level was unusual or abnormal, but whether the period of employment stress preceding his heart attack was unusual or abnormal for employees in his particular employment. Sheth relies on the *380 following from Desotell where this court emphasized the distinction between "period of employment stress" and "causative exertion":
The statute sets out the "period of employment stress" and "causative exertion" as distinct requirements and phrases them so that the period of stress must be proven under the objective standard discussed above, before the causative exertion alleged to have occurred during the period of stress can be identified as legal causation. Cf. Claim of McCarley, 590 P.2d at 1336.
... For a claimant to receive benefits under W.S. XX-XX-XXX(b) (June 1983 Repl.), he must first prove, under the statutorily imposed objective standard, that the injured employee experienced an "actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment ..." "[T]hen only if the causative exertion occurs during..." the proven period of employment stress, can the claimant proceed to prove medical causation and the four hour requirement. We must read the statute this way to give the requirement of a "period of stress" and a "causative exertion" each plain and distinct meaning.
Matter of Desotell, 767 P.2d at 1003.
We first examine whether Sheth suffered an "actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee." § 27-14-603(b)(ii). As mentioned, "[t]his is an objective test and invokes the usual employment activities; it does not focus on the activities or characteristics of an individual employee." Harris, 931 P.2d at 259; State ex rel. Workers' Compensation Div. v. Brewbaker, 972 P.2d 962, 964 (Wyo.1999).
At the contested case hearing, Sheth presented no objective evidence that his period of employment stress on August 6, not including any carbon monoxide exposure, was clearly unusual or abnormal for employees in his particular employment. Although Sheth testified that a 10-hour workday on a construction site on a warm day in a confined structure was unusual for him, neither he nor any of his witnesses provided testimony on the objective aspect of the usual employment activities of employees in his field. Although Sheth asserts the evidence on this point was overwhelming, he points us to nothing in the record to support his assertion that the objective standard was met. Instead of focusing on the objective aspect of the usual employment activities, it was Sheth's theory that the exposure to unsafe or elevated carbon monoxide levels created the clearly unusual or abnormal period of employment stress. Indeed, in closing argument at the contested case hearing, Sheth's counsel argued, "there was clearly an unusual condition at the workplace, and the unusual condition being an elevated level of carbon monoxideor exposure to a level of carbon monoxide for an extended period of time." Sheth now claims the question is only whether it is unusual or abnormal for design engineers to be exposed to increased levels of carbon monoxide at all. However, even if this were the question, Sheth presented no evidence to establish this point in accord with the objective standard.
Regardless, given Sheth's theory of recovery, and assuming exposure to unsafe levels of carbon monoxide creates an employment stress clearly unusual to or abnormal for employees in Sheth's field, we reject Sheth's contention that the hearing examiner misapplied the cardiac condition statute. Examining the Order Denying Benefits, it is clear the hearing examiner evaluated this case under § 27-14-603(b) and the standards enunciated in Desotell. It is also clear the hearing examiner recognized the decisive factual issue revolved around the carbon monoxide levels at the jobsite. Indeed, the hearing examiner wrote in its findings of fact: "There is no evidence establishing that Sheth was, in fact, exposed to unsafe levels of carbon monoxide while at work on August 6, 1998. Without this evidence, Sheth cannot establish that he suffered clearly unusual or abnormal employment stress." Even the paragraph with which Sheth takes issue includes the following: "Sheth must establish that he was exposed to unsafe levels of carbon monoxide which led to his heart attack." Although the hearing examiner wrote Sheth *381 failed to establish the level of carbon monoxide "was, in fact, clearly unusual or abnormal," we cannot conclude that the hearing examiner misapplied the law. Certainly, the hearing examiner could have used words other than unusual or abnormal to describe the requisite carbon monoxide levels; however, we do not believe it necessary to engage in a debate over semantics in this case. We conclude that the hearing examiner's decision reflects an appropriate application of the cardiac condition statute and is in accord with law. We turn then to the evidence regarding the carbon monoxide levels at the jobsite.
The hearing examiner found that Sheth failed to establish he was exposed to unsafe levels of carbon monoxide. In its findings, the hearing examiner wrote:
19. Kenneth L. White (White), a certified industrial hygienist, performed a carbon monoxide exposure estimate and testified concerning his evaluation. He was provided the blueprints of the salt dome structure and descriptions of the machinery that was running. It is his opinion that there were elevated levels of carbon monoxide in the dome. In performing his evaluation, he estimated the internal volume of the dome and estimated the emission rates of the gas and diesel engines. He determined the carbon monoxide emission rate to be 3,733 g/hr. He did not have any information concerning the air exchange rate in the dome. He then made a number of assumptions and determined if there was one air exchange an hour there would be 2,011 ppm [parts per million] of carbon monoxide present in the dome. With ten air changes an hour, the rate would be 201 ppm....
20. White testified that a safe level for carbon monoxide is 25 ppm over an eight hour period for individuals with a coronary condition and that a desirable limit is 5 ppm. There would need to be 80 air changes an hour to reach the 25 ppm figure. He admitted that he made a number of assumptions in reaching his estimates and that knowing the size of the roof opening and wind conditions were important. He testified the carbon monoxide level definitely exceeded 5 ppm and would guess that it exceeded 25 ppm.
21. The evidence is clear that on August 6, 1998, Sheth worked a long, hot day in an enclosed area and that there was some exposure to elevated carbon monoxide levels. The evidence is also clear that Sheth suffered a myocardial infarction on his way home from work and that the symptoms manifested within four hours of work. The evidence also establishes that Sheth had a[n] underlying coronary heart disease. When he was first evaluated by doctors, his heart attack was attributed to his age and his twenty year history of smoking. Carbon monoxide exposure was not raised as a possible cause until October 1998. At this time Drs. Moseley and Revenaugh opined that carbon monoxide exposure could be a contributing cause to the heart attack. Neither doctor was aware of the level of carbon monoxide exposure. The only evidence regarding the level of exposure is an estimate from White and he cannot say for certain what the level of exposure was. He can only say the level was over 5 ppm and guessed that it was over 25 ppm.
22. This office finds that Sheth has coronary heart disease, was a male over the age of 45, and had a history of smoking two packs a day. These are all positive risk factors for heart attacks. According to Dr. Glode, these factors are just as likely to have caused Sheth's myocardial infarction. Even Drs. Moseley and Revenaugh have stated these could be a cause of the heart attack without some other contributing factor. There is no evidence establishing that Sheth was, in fact, exposed to unsafe levels of carbon monoxide while at work on August 6, 1998. Without this evidence, Sheth cannot establish that he suffered clearly unusual or abnormal employment stress. Benefits should therefore be denied.
As noted by the hearing examiner, due to variables such as wind conditions and the size of the opening in the dome's roof, Sheth's industrial hygienist could only guess about the carbon monoxide levels inside the salt dome storage facility on the day in question. *382 We add that, because neither Sheth nor Dr. Moseley immediately suspected that carbon monoxide might have caused the heart attack, no tests were performed to determine carbon monoxide levels in Sheth's blood. Dr. Moseley confirmed these tests were not routine procedure and the tests must be done in a timely fashion, before the carbon monoxide is eliminated. This being the state of the record, we conclude that the hearing examiner's finding that Sheth failed to establish unsafe levels of carbon monoxide is not clearly contrary to the overwhelming weight of the evidence. We further conclude that the hearing examiner's decision that Sheth failed to meet his burden of proof is not arbitrary and capricious.
The hearing examiner's Order Denying Benefits is affirmed.
NOTES
[*] Retired June 2, 2000.
[1] This structure houses materials for use on icy roads.
[2] The Division did not contest the timeliness of Sheth's injury report. Wyo. Stat. Ann. § 27-14-502 (Lexis 1999).