2001 WY 48

**In the Matter of the WORKER'S COMPENSATION CLAIM OF Darrell E. JOHNSON, an Employee of Kersten Trailer Sales, Inc.**

**Darrell E. Johnson, Appellant (Petitioner),**

v.

**State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

No. 00–236.

Supreme Court of Wyoming.

May 16, 2001.

Representing Appellant: Donald L. Painter, Casper, WY.

Representing Appellee: Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

KITE, Justice.

[¶ 1] Appellant Darrell E. Johnson suffered a work related injury in November 1996. In June of 1999, Mr. Johnson applied for permanent partial disability (PPD) benefits, which the Division of Workers' Safety and Compensation (Division) denied because he was not actively seeking work. On appeal, the Office of Administrative Hearings (OAH) denied benefits because Mr. Johnson failed to establish by a preponderance of the evidence that he had actively pursued work and had sustained a loss of earnings due to his work related injury. The district court affirmed the OAH decision. On the specific facts and evidence presented in this case, we reverse and remand for an award of PPD benefits.

## ISSUE

[¶ 2] This statement of the issue is found in Mr. Johnson's brief:

1. Whether [Mr. Johnson] is excused from the legal requirement of a job search in order to qualify for a permanent partial disability award where any such search would be futile.

Appellee State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division posed the issue in the following manner:

Was the Hearing Examiner's determination that [Mr. Johnson] failed to seek suitable employment as required by Wyo. Stat. Ann. § 27–14–405(h)(iii) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law?

## FACTS

[¶ 3] On November 14, 1996, a co-worker accidentally dropped a four-pound hammer on Mr. Johnson's head. At the time of the accident, Mr. Johnson was standing on a ladder, and the blow caused him to fall to a concrete floor some fourteen feet below. He suffered injuries to his head, neck, and lower back requiring two surgeries on his cervical spine and two surgeries on his lower back.

[¶ 4] Mr. Johnson was forty-five years old when the accident occurred and was employed as a welder for Kersten Trailer Sales, Inc. earning ten dollars per hour. He had approximately a ninth grade education with a GED and had worked the previous twenty years in the construction profession, primarily as a welder and performing heavy labor functions.

[¶ 5] At the time of the PPD hearing, Mr. Johnson was confined to a wheelchair and could walk only ten to fifteen feet unassisted. He experienced constant headaches and pain in his right arm, legs, and lower back. He was unable to use his right arm and experienced numbness of his left arm. He had developed a seizure disorder, and the hearing examiner personally observed his spasms and tremors. Mr. Johnson took medication on a daily basis for pain and the seizure disorder. As a result of back surgery, he had to use a catheter. Presumably due to the seizure disorder and medication, he had been unable to

drive for some five months prior to the hearing date. It is uncontested that Mr. Johnson's physical impairments are the result of the work related accident.

[¶ 6] Mr. Johnson applied for PPD benefits on June 6, 1999. A final determination denying the benefits was issued June 18, 1999, stating that Mr. Johnson was ineligible due to his failure to actively seek work. Wyo. Stat. Ann. § 27–14–405(h)(iii) (LEXIS 1999). The PPD benefits denial was appealed, and a hearing was held by the OAH on September 29, 1999. The evidence admitted during the course of the hearing included Mr. Johnson's sworn testimony, a letter from Dave Sigurslid, M.D., his treating physician, and a second opinion impairment rating report by Victoria M. Vernon, M.D. In her report, Dr. Vernon concluded Mr. Johnson had incurred a twenty-four percent whole person impairment due to the work related accident. On October 28, 1999, the OAH issued its decision denying benefits on the grounds that Mr. Johnson had failed to establish by a preponderance of the evidence that he had actively pursued work and, due to his work related injury, had sustained a loss of earnings. Mr. Johnson filed a Petition for Review, and the district court ultimately affirmed the OAH decision denying benefits. This appeal followed.

## STANDARD OF REVIEW

[¶ 7] In a case of this nature, our standard of review is well established:

A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of Wyo. Stat. § 16–3–114(c)(ii) (1990). On appeal the complainant ... has the burden of proving arbitrary administrative action. The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. The deference normally accorded to the findings of

fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. Demonstrating evidentiary contradictions in the record does not establish the irrationality of the ruling, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it.

*Lunde v. State ex rel. Wyoming Workers' Compensation Division,* 6 P.3d 1256, 1258–59 (Wyo.2000) (citations omitted); *see also Erdman v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 5 P.3d 64, 66 (Wyo.2000); *Pederson v. State ex rel. Wyoming Workers' Compensation Division,* 939 P.2d 740, 742 (Wyo.1997).

[¶ 8] In the exercise of interpreting statutes:

"We read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole. We make the determination as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise, although we may resort to extrinsic aids of interpretation, such as legislative history if available and rules of construction, to confirm the determination. On the other hand, if we determine that the meaning is subject to varying interpretations, we must resort to available extrinsic aids. If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court."

*Hernandez v. Laramie County School District No. 1,* 8 P.3d 318, 321 (Wyo.2000) (quoting *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1045 (Wyo.1993)).

## DISCUSSION

[¶ 9] Mr. Johnson had the burden of proving eligibility for PPD benefits by a preponderance of the evidence. *Lunde*, 6 P.3d at 1258. When Mr. Johnson was injured, the statute at issue required proof as follows:

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

(i) The injured employee is because of the injury, unable to return to employment at a comparable or higher wage than the wage the employee was earning at the time of injury;

(ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

(iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

Wyo. Stat. Ann. § 27–14–405(h) (LEXIS 1999) (amended 2000). The OAH decision reflects "there is no dispute between the parties that Johnson has satisfied the first two requirements in the above quoted statute." The only issue for resolution was whether Mr. Johnson had proven by a preponderance of the evidence that he actively sought suitable employment, considering his health, education, training, and experience. The concept of "preponderance of the evidence" is defined as "proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *Scherling v. Kilgore*, 599 P.2d 1352, 1359 (Wyo.1979); *see also Ikenberry v. State ex rel. Wyoming Workers' Compensation Division*, 5 P.3d 799, 808–09 (Wyo.2000). "The evidence presented is not to be liberally construed in a claimant's favor when determining if an injured worker has met that burden of proof." *Ikenberry*, 5 P.3d at 809.

[¶ 10] Beyond Mr. Johnson's testimony regarding his severe physical limitations, which we grant is subjective and perhaps less reliable than other forms of evidence, he also submitted a letter from his physician, Dr. Sigurslid, who had been actively treating him for over a year. That letter, dated April 21, 1999, provides in its entirety as follows:

To Whom It May Concern:

RE: Darrell Johnson

*This letter is to verify my assessment of Mr. Johnson's capability for work.* He has severe chronic neck and back problems for which he receives weekly to every two week pain injections and takes pain medication. This occurs in the setting of relatively little activity and wheelchair assistance. When he increases any amount of his activity he suffers an increase in his back pain. Stress also adds to this degree of back pain.

*I cannot see where placing Mr. Johnson at any regular job will help his back pain picture nor is it likely to remain static. It will undoubtedly get worse with enforced sitting, standing or any prescribed activity such as a job might indicate at this point.*

I hope this letter is of some value to you. If you desire further information and with Mr. Johnson's permission I am happy to provide it for you.

(Emphasis added.)

[¶ 11] The OAH hearing examiner findings in relation to this evidence are as follows:

Johnson's current physician, Dr. Sigurslid, opined that regular employment would undoubtedly worsen Johnson's pain and physical condition. Exhibit 2. Dr. Sigurslid did not opine that Johnson was unable to return to employment at a comparable or higher wage than the wage he was earning at the time of injury.

These findings are internally inconsistent and therefore arbitrary and capricious. Dr. Sigurslid's letter clearly relays his medical opinion that any level of "regular" work activity would make Mr. Johnson's already extraordinarily limited physical capacity and condition worse. It is arbitrary and capri-

cious to somehow extract from this opinion the factual conclusion, stated in the double negative, that the doctor did not say Mr. Johnson could not return to work for a comparable or higher wage. Furthermore, as noted above, the OAH conceded the requirement of § 27–14–405(h)(i), which is the inability to return to employment at a comparable or higher wage than he was earning at the time of injury, had been met and was not at issue. So this finding has no relevance. We conclude the treating physician opined Mr. Johnson could not return to work without making his condition worse which supports the inference that the claimant could not return to work period leastwise for a comparable or higher wage.

■ [¶ 12] Mr. Johnson's burden was to establish that it was more likely than not that he had actively sought suitable employment, considering his health, education, training, and experience. Mr. Johnson acknowledged he did not seek work. His treating physician had advised him any type of work would aggravate his already severely debilitated condition. The question we face now is whether the written statement by Dr. Sigurslid was sufficient to carry Mr. Johnson's burden and shift that burden to the Division. *See Sellers v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 979 P.2d 959, 961 (Wyo.1999).

■ [¶ 13] The circumstances of this case raise a peculiar quandary. Mr. Johnson is evidently in a very diminished physical state. His doctor has advised him against work of any kind, and from his testimony, which is consistent with this medical opinion, it appears he has not been released to work. On the other hand, § 27–14–405(h)(iii) seems to require evidence of an active job search. However, at the same time, Wyo. Stat. Ann. § 27–14–407 (LEXIS 1999)[1] precludes a claimant from engaging in activities which imperil or retard recovery. "[W]orkers' compensation benefits will not be awarded for the subsequent injury caused by the

worker's willful disregard for his physical limitations and his doctor's orders." *Fenner v. Trimac Transportation, Inc.*, 554 N.W.2d 485, 490 (S.D.1996) (*State ex rel. Wyoming Workers' Safety and Compensation Division v. Henriksen*, 2001 WY 42, 21 P.3d 1185, presents an analogous factual circumstance in the context of a claimant's application for temporary total disability benefits). This potential dilemma is resolved by the language of § 27–14–405(h)(iii) which qualifies the requirement the employee "actively sought suitable work" with the language "considering the employee's health." Pursuant to this analysis, we conclude Mr. Johnson met his burden.

■ [¶ 14] The question then arises, upon the shifting of the burden, whether the Division adequately demonstrated Mr. Johnson did not actively pursue employment considering his health. The only evidence the Division submitted was a second opinion impairment report prepared by Dr. Vernon. This document reflects that Dr. Vernon reviewed Mr. Johnson's medical records and conducted a physical examination. On this information, she ultimately concluded Mr. Johnson had incurred a twenty-four percent whole body impairment directly related to the workplace accident. The only statements she made with regard to Mr. Johnson's employment capacity are as follows:

In light of his injury and physical impairments, I do not feel that Mr. Johnson will be able to return to his prior line of work which was a heavy duty job description. Mr. Johnson would do best should he desire to return to the work force to receive job retraining at the sedentary level. Mr. Johnson reports difficulty sitting, standing or walking for prolonged periods of time and I feel that it would be in his best interest to perform all activities on an as tolerated basis only. I would limit his sitting to no more than 1 hour at a time with positional changes and rest breaks as needed.

---

1. Section 27–14–407 provides:
   If an injured employee knowingly engages or persists in an unsanitary or injurious practice which tends to imperil or retard his recovery, or if he refuses to submit to medical or surgical treatment reasonably essential to promote his recovery, he forfeits all right to compensation under this act. Forfeiture shall be determined by the hearing examiner upon application by the division or employer.

The OAH hearing examiner somehow gleaned from this statement that the doctor did not say Mr. Johnson could not return to work for a comparable or higher wage. Although we grant Dr. Vernon did not make such a statement, its omission is not relevant. As noted above, that fact was not at issue. The reasonable inference to be drawn from the Division's doctor's statement was that Mr. Johnson's physical capacity would only allow sedentary work on an "as tolerated basis" with the flexibility to permit him to sit, stand, and change position on an as-needed basis. This medical opinion, from a doctor examining Mr. Johnson for the first time for the purpose of an impairment rating, actually tends to support the treating physician's conclusion that return to the "regular" workforce would be detrimental to his health. Dr. Vernon's report, at best, provides significant qualifications as to Mr. Johnson's capacity to endure normal sedentary work functions without proffering an opinion as to his employability. This limited and highly qualified judgment does not override the treating physician's evaluation that his patient cannot work without making his condition worse.

[¶ 15] It is correctly noted, in both the OAH decision and the district court decision, that vocational evidence is lacking in the record. The Division could have developed such evidence to establish Mr. Johnson's vocational capacity and to specifically identify jobs he could perform with his impairments that would not worsen his physical state. It is possible such evidence would have met and overridden Dr. Sigurslid's medical opinion of Mr. Johnson's work capacity, or lack thereof. The Division, however, did not provide such evidence. Upon our examination of the conflicting evidence, we have determined the OAH could not reasonably have made its finding and order based upon all the evidence before it. *Lunde*, 6 P.3d at 1259.

[¶ 16] Reversed and remanded for an award of PPD benefits.