2001 WY 127

**In the Matter of the Worker's Compensation Claim of Richard W. BRUNS, Appellant (Petitioner),**

v.

**TW SERVICES, INC., n/k/a AMFAC Parks and Resorts, Appellee (Employer/Respondent),**

**and**

**State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

No. 00–292.

Supreme Court of Wyoming.

Dec. 14, 2001.

Representing Appellant: George Lemich and Richard Beckwith of Greenhalgh, Beckwith, Lemich & Stith P.C., Rock Springs, WY.

Representing Appellee TW Services, Inc.: Dick L. Kahl of Kahl Law Office, Powell, WY.

Representing Appellee State ex rel. Wyoming Workers' Safety and Compensation Division: Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Appellant Richard Bruns applied for worker's compensation benefits alleging he suffered a heart attack caused by his work as a middle porter at Mammoth Hot Springs in Yellowstone National Park.[1] The Division of Workers' Safety and Compensation (division) denied the claim. On appeal, the Office of Administrative Hearings (OAH) denied the claim on two grounds: (1) the claimant failed to establish his heart condition met the statutory requirements of Wyo. Stat. Ann. § 27–14–603(b) (LexisNexis 2001),[2] and (2) the claimant failed to establish a compensable work-related injury. The district court certified the petition for review to this court. We affirm the OAH's denial of benefits.

## ISSUES

[¶ 2] Mr. Bruns presents these issues:

I. Whether, despite the law of the case, the Office of Administrative Hearings committed an error of law in concluding that the Workers' Compensation Division had not waived its objections to the compensability of Appellant's coronary condition under Wyo. Stat. § 27–14–603(b) by its failure to state this objection in its Final Determination of his claim.

II. Whether the conclusion of the Office of Administrative Hearings that the Appellant's myocardial infarction was the

---

1. The duties of the middle porter included the indoor and outdoor activities of cleaning the public restrooms, the hot tub cabins, and the hot tubs, vacuuming hallways, and dusting. The position is also referred to at various points of the record as a "mid-porter."

2. Section 27–14–603(b) provides:

(b) Benefits for employment-related coronary conditions except those directly and solely caused by an injury, are not payable unless the employee establishes by competent medical authority that:

(i) There is a direct causal connection between the condition under which the work was performed and the cardiac condition; and

(ii) The causative exertion occurs during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee; and

(iii) The acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion.

result of a pre-existing condition was supported by substantial evidence.

Appellee TW Services, Inc. frames the issues in the following manner:

1. Was the decision of the Office of Administrative Hearings, in applying the provisions of W.S. § 27–14–603(b) proper under the circumstances of this case?

2. Irrespective of the application of W.S. § 27–14–603(b), was the decision of the Office of Administrative Hearings in denying benefits to Appellant supported by substantial evidence?

Appellee State ex rel. Wyoming Workers' Safety and Compensation Division restates the issues:

I. Did the Hearing Examiner correctly conclude that Wyo. Stat. Ann. § 27–14–603(b) is applicable to Appellant's case?

II. Did the Hearing Examiner correctly conclude, pursuant to Wyo. Stat. Ann. § 27–14–603(b), that Appellant failed to prove every element of his claim?

III. Was the Hearing Examiner's finding that Appellant's myocardial infarction was the result of a pre-existing condition supported by substantial evidence?

## FACTS

[¶ 3] During the winter season of 1995–96, Mr. Bruns was employed by TW Services as a middle porter at its Mammoth Hot Springs facility in Yellowstone National Park. Part of his duties included cleaning four outdoor hot tubs once an hour when the tubs had been used during the preceding hour. This cleaning entailed reaching over the edge of the hot tub to the inside tub edge with the arm extended at approximately shoulder level and lightly scrubbing or wiping the scum line with a sponge. The evening temperatures at this time of year averaged around zero degrees Fahrenheit, and the tub water temperatures were approximately 102 degrees Fahrenheit.

[¶ 4] On the night of January 5, 1996, at about eleven o'clock in the evening, Mr. Bruns, who was fifty-one years of age, was cleaning the hot tubs when he experienced roughly six minutes of pain in his chest, wrist, and the right side of his jaw. After the pain subsided, he completed his work shift and went home.

[¶ 5] At six o'clock the next morning, Mr. Bruns was awakened by chest and jaw pain similar to the pain he had experienced the night before. He called an ambulance for transport to Livingston Memorial Hospital, where the emergency room physician, Dennis Noteboom, M.D., diagnosed an acute anterior myocardial infarction. In the history-and-physical-exam documentation, Dr. Noteboom noted Mr. Bruns was a periodic smoker and had a brother who died at the age of fifty due to a massive heart attack. Mr. Bruns was transferred to Deaconess Medical Center in Billings, Montana, for further evaluation by two cardiologists. These physicians conducted a cardiac catheterization with bilateral coronary angiography and placement of stents. Through this process, it was determined that Mr. Bruns had an eighty percent occlusion or blockage of the right coronary artery and a ninety-eight percent occlusion of the left anterior descending coronary artery.

[¶ 6] On January 25, 1996, Mr. Bruns filed a report of injury with the division. In this report, he described his injury in the following manner: "I WAS DOING HOT TUB LATE AT NIGHT AND THE TEMPERATURE WAS VERY LOW. I WENT INTO THE ROOM & PAINS WENT THROUGH THE ARMS & CHEST." In the employer section of the form, TW Services described the injury as: "Employee experienced a heart attack 1/6/96 (off duty). He was experiencing pains while working here and feels the cold temperature contributed." In the same report, TW Services objected to the claim stating, "1) No injury occurred while working. 2) No causal connection between the condition under which work was performed and [Mr. Bruns'] cardiac condition. 3) Stress claimed is not clearly unusual to or abnormal for employees in this position [middle porter]—No causative exertion."

[¶ 7] The division issued a final determination denying the claim for benefits on February 28, 1996. The stated reasons were, "The employer has objected to this injury for the reason that the injury did not occur at

work. The Division is also objecting to this claim due to the fact that your coronary condition is hereditary and pre-existing." Objections to the determination were required to be filed by "affected parties" before March 25, 1996. Mr. Bruns timely filed an objection, but TW Services did not.

[¶ 8] The appeal was referred to the medical commission for hearing. The certified record filed with this court does not contain any of the medical commission's documentation. However, based on their briefs, the parties are in agreement that the medical commission heard the appeal and benefits were again denied. Mr. Bruns appealed the medical commission's denial, and the district court ultimately [3] held:

1. The Medical Commission Hearing Panel did not have subject matter jurisdiction over this claim; consequently, its decision was void *ab initio;*

2. The procedure followed in this case pursuant to Wyo. Stat. § 27–14–616 resulted in unconstitutional violations of due process rights by depriving the Employee Claimant of his fundamental substantive right to a fair and impartial hearing; and,

3. The Division of Workers' Safety and Compensation waived any objection to the compensability of the Employee Claimant's coronary condition pursuant to Wyo. Stat. § 27–14–603(b) by failing to state this objection in its Final Determination Letter. The district court's order remanded the claim for a rehearing by the OAH on the objections stated in the notice of final determination. No appeal was taken from this final January 11, 2000, order.

[¶ 9] In April 2000, TW Services filed both an entry of appearance and a separate objection to the award of benefits with the OAH. As the employer, TW Services objected to the award of benefits specifically contending Mr. Bruns' injury failed to meet the statutory requirements of § 27–14–603(b). Mr. Bruns filed a traverse to the objection maintaining TW Services waived its right to participate in the appeal by having failed to object to the final determination letter by March 25, 1996. He further asserted the district court's order, by either the "law of the case" doctrine or the related theory of collateral estoppel, precluded the applicability of § 27–14–603(b) from being relitigated.

[¶ 10] Prior to the June 19, 2000, OAH rehearing, the parties stipulated to the admission of the evidence, including testimony in the form of written deposition. For this reason, all the evidence was admitted at the commencement of the rehearing. Mr. Bruns was excused from appearing and did not testify in any manner, nor were any other live witnesses called to testify. Therefore, the hearing consisted of only oral argument by counsel as to the relevance and weight of the evidence, the effect of the district court's unappealed order, and, specifically, whether the standard of § 27–14–603(b) could be applied in light of that order.

[¶ 11] On July 20, 2000, the OAH issued an Order Denying Benefits holding that, despite the district court's order, § 27–14–603(b) was applicable and Mr. Bruns had failed to prove his coronary condition met the statutory requirements. The OAH further concluded, although the evidence demonstrated Mr. Bruns' underlying coronary condition predisposed him to an acute event, it did not establish the hot tub cleaning activity caused his myocardial infarction. Therefore,

---

**3.** Prior to issuing its decision, the district court certified two questions of law to this court. We declined to answer, concluding an initial determination by the district court was appropriate. The questions, as framed in the district court's order of certification, are set out below:

 1. Whether the enabling statute creating the Medical Commission, Wyoming Statute § 27–14–616 (1991 & Supp.1996), and the Regular Rules of the Medical Commission result in unconstitutional violations of substantive due process rights by depriving the Employee Claimant of his fundamental liberty interest to a fa[i]r and impartial hearing.

 2. Whether the Division of Wyoming Workers' Safety and Compensation waived any objection to the compensability of the Employee Claimant's coronary condition under Wyoming Statute § 27–14–603(b) (1977) by its failure to state this objection in its notice to the Employee Claimant of the Final Determination of his claim.

*See* Wyoming Supreme Court Docket No. 97–366, Notice of Declination to Answer Certified Questions, filed January 7, 1998.

even if § 27–14–603(b) was not applied, Mr. Bruns did not meet his burden to prove the injury was work related. Mr. Bruns filed a petition for review of the administrative decision which the district court certified to this court.

## STANDARD OF REVIEW

[¶ 12] An employee-claimant in a worker's compensation case has the burden to prove all the statutory elements which comprise a compensable injury by a preponderance of the evidence. *Hanks v. City of Casper*, 2001 WY 4, ¶ 6, 16 P.3d 710, ¶ 6 (Wyo.2001); *Sherwin–Williams Company v. Borchert*, 994 P.2d 959, 963 (Wyo.2000); *Thornberg v. State ex rel. Wyoming Workers' Compensation Division*, 913 P.2d 863, 866 (Wyo.1996). This includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment. *Wesaw v. Quality Maintenance*, 2001 WY 17, ¶ 10, 19 P.3d 500, ¶ 10 (Wyo.2001); *Hanks*, ¶ 6; *State ex rel. Wyoming Workers' Compensation Division v. Espinoza*, 924 P.2d 979, 981 (Wyo.1996). Put another way, the claimant has the burden of following procedures and rules contained within the Wyoming Worker's Compensation Act in order to establish entitlement to worker's compensation benefits. *Sherwin–Williams Company*, 994 P.2d at 963; *Pittman v. State ex rel. Wyoming Workers' Compensation Division*, 917 P.2d 614, 617 (Wyo.1996).

[¶ 13] To meet the preponderance standard, the claimant must present evidence which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence. *Sherwin–Williams Company*, 994 P.2d at 963. The evidence is not to be liberally construed in a claimant's favor when determining whether an injured worker has met that burden of proof. *Johnson v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2001 WY 48, ¶ 9, 23 P.3d 32, ¶ 9 (Wyo.2001); *Ikenberry v. State ex rel. Wyoming Workers' Compensation Division*, 5 P.3d 799, 809 (Wyo.2000).

[¶ 14] We review a hearing examiner's decision that a claimant has failed to meet the burden of proof under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" standard mandated in Wyo. Stat. Ann. § 16–3–114(c)(ii)(A) (LexisNexis 2001). *Hamilton v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2001 WY 20, ¶ 9, 18 P.3d 637, ¶ 9 (Wyo.2001). The appealing complainant has the burden to prove arbitrary administrative action. *Id.* The agency, as fact finder, is charged with weighing the evidence and determining the credibility of witnesses. *Id.* Hence, the deference normally accorded to the trial court's findings of fact is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Id.* To the extent this case presents determinations of questions of law, it is well settled that such rulings are reviewed *de novo*. *Sheth v. State ex rel. Wyoming Workers' Compensation Division*, 11 P.3d 375, 378 (Wyo.2000); *State ex rel. Wyoming Workers' Safety and Compensation Division v. Wright*, 983 P.2d 1227, 1231 (Wyo.1999); *Pohl v. Bailey Company*, 980 P.2d 816, 819 (Wyo.1999).

## DISCUSSION

### A. Application of § 27–14–603(b)

[¶ 15] Mr. Bruns asserts that the OAH erred on rehearing by applying the coronary condition provisions of § 27–14–603(b) to evaluate his injury because the district court's order precluded consideration of the statutory standard pursuant to the "law of the case" and collateral estoppel. Although the propriety of the district court's order is not at issue herein, its effect on the subsequent rehearing is relevant.

[¶ 16] Of significance, the district court concluded the medical commission hearing panel did not have subject matter jurisdiction over Mr. Bruns' claim. Subject matter jurisdiction is the authority to hear and decide cases of the general class to which the proceedings in question belong. *Amoco Production Company v. Wyoming State*

*Board of Equalization,* 7 P.3d 900, 904 (Wyo. 2000); *see also Weller v. Weller,* 960 P.2d 493, 495 (Wyo.1998); *Lacey v. Lacey,* 925 P.2d 237, 238 (Wyo.1996); *Fuller v. State,* 568 P.2d 900, 902–03 (Wyo.1977). The subject-matter-jurisdiction requirement is equally applicable to courts and administrative agencies. *Amoco Production Company,* 7 P.3d at 904; *see also Wright,* 983 P.2d at 1231. Consequently, the district court found the medical commission did not have the proper authority to hear and decide Mr. Bruns' claim.

[¶ 17] The district court's order further provided the medical commission's decision was void *ab initio* due to the lack of subject matter jurisdiction. The expression *"ab initio"* is defined as meaning: "From the beginning; from the first act; from the inception." Black's Law Dictionary 6 (6th ed.1990). The effect of the district court's ruling was that the medical commission's decision was void from its inception. We have previously acknowledged:

> "A void judgment is not entitled to the respect accorded to, and is attended by none of the consequences of, a valid adjudication. Indeed, a void judgment need not be recognized by anyone, but may be entirely disregarded or declared inoperative by any tribunal in which effect is sought to be given to it. It has no legal or binding force or efficacy for any purpose...." 46 Am.Jur.2d *Judgments* § 31 (1994).

*Thomas v. Thomas,* 983 P.2d 717, 720 (Wyo. 1999). "All orders arising from a void judgment are invalid." *Ruwart v. Wagner,* 880 P.2d 586, 591 (Wyo.1994); *see also Wunnicke v. Leith,* 61 Wyo. 191, 157 P.2d 274, 278 (1945). Further, a void judgment is not *res judicata. Ferriter v. Estate of Blaney,* 607 P.2d 354, 357 (Wyo.1980).

[¶ 18] "Where the judgment below was rendered without jurisdiction, an appellate court must ordinarily reverse and remand for dismissal. Indeed, such a judgment cannot be reversed on the merits, because the decision below is void." 5 Am. Jur.2d *Appellate Review* § 814 at 473 (1995). Further, the appellate court must dismiss an appeal of a void decision because, through attribution, the appellate court also lacks jurisdiction. *Id.* at § 864.

[¶ 19] The district court's order left the parties in the same positions they held prior to the proceeding before the medical commission. *KAC v. SR (Paternal Rights of TLB),* 771 P.2d 811, 813 (Wyo.1989). Whether or not this decision was correct is not at issue here as it was never appealed. Rather, we simply recognize its conclusive result. Due to the nullifying effect of this holding, the district court's further determinations[4] can only be viewed as advisory, not binding, in nature, including the conclusion that the division waived objection to the compensability of Mr. Bruns' coronary condition pursuant to § 27–14–603(b) by failing to state this objection in its final determination letter. This holding could not control the parties' actions on rehearing. The district court, having determined the medical commission lacked subject matter jurisdiction, likewise lacked jurisdiction to issue decisions as to the merits of the underlying claim. Accordingly, the parties were returned to the positions they held prior to the medical commission proceedings.

[¶ 20] Mr. Bruns has vigorously argued that the "law of the case" and/or the related theories of collateral estoppel and *res judicata* precluded consideration of § 27–14–603(b) on rehearing.

The "law of the case" doctrine stands for the proposition that a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. This doctrine is designed to

---

4. Although somewhat redundant, we restate the district court's further conclusions to facilitate the reading of this opinion:
 2. The procedure followed in this case pursuant to Wyo. Stat. § 27–14–616 resulted in unconstitutional violations of due process rights by depriving the Employee Claimant of his fundamental substantive right to a fair and impartial hearing; and,

3. The Division of Workers' Safety and Compensation waived any objection to the compensability of the Employee Claimant's coronary condition pursuant to Wyo. Stat. § 27–14–603(b) by failing to state this objection in its Final Determination Letter.

avoid repetitious litigation and to promote consistent decision making; thus, it is related to *res judicata,* collateral estoppel and *stare decisis.* Usually the "law of the case" doctrine requires a district court to adhere to its prior rulings, adhere to the rulings of an appellate court, or adhere to another judge's rulings in the same case or a closely related case.

*Lyden By and Through Lyden v. Winer,* 913 P.2d 451, 454 (Wyo.1996) (citations omitted); *see also Triton Coal Company v. Husman, Inc.,* 846 P.2d 664, 667 (Wyo.1993). In this matter, the definitive "law of the case" was the district court's determinations that the medical commission lacked subject matter jurisdiction and its decision was void *ab initio.* This result is inescapable. The district court's ruling eclipsed its own jurisdiction to further consider the merits of the appeal, and, as stated before, a void judgment is not *res judicata.* Am.Jur.2d, *supra* at § 864; *Ferriter,* 607 P.2d at 357. Neither the district court's advisory pronouncements nor the "law of the case" and related doctrines precluded application of § 27–14–603(b) on rehearing. Due to the manner of the remand, the parties were returned to their original positions as of the February 28, 1996, final determination notice.

[¶ 21] In light of these circumstances, we must determine whether the OAH properly considered § 27–14–603(b) on rehearing.

We have previously held that issues not given in the Division's "Final Determination" letter can be raised in pleadings such as disclosure statements. *In Matter of Workers' Compensation Claim of Ireland v. State ex [ ] rel. Wyo. Workers' Comp. Div.,* 998 P.2d 398, 401 (Wyo.2000). *Ireland* also ruled that "[p]leadings are used to give parties notice of the nature of claims and defenses, to narrow the issues, and to guide the parties and the court in the conduct of the case. If the pleadings and notice of hearing are to mean anything in a contested case hearing, the hearing examiner must be limited to considering only those issues presented in the notice and pleadings." *Id.* (citation omitted).

*Wesaw,* ¶ 20. The issue we must decide is whether § 27–14–603(b) was raised in any of the pleadings filed subsequent to the remand order. To do so, we have to resolve an initial issue regarding TW Services' participation in the remand proceedings.

[¶ 22] Mr. Bruns has asserted that TW Services failed to file an objection to the final determination notice by the original deadline of March 25, 1996, and, therefore, was prevented from participating in the hearing on remand. This contention lacks merit. TW Services did object to the award on the original claim form and prevailed to the extent benefits were denied. It was not thereafter compelled to file an objection to the final determination denying benefits. Mr. Bruns seems to suggest, when employers object to an award and the benefits are denied, to remain a proper party, they must file further "objections"[5] to the final determination even though they agree with the end result. Such a requirement encourages the filing of needless "objections" to all final determinations to ensure employers have a place at the table if, through complex proceedings or otherwise, they ultimately find they need one. It could also be interpreted to mean claimants must file "objections" to all final determinations even when benefits are granted consistent with their applications in order to retain party status. Such a requirement would inevitably waste considerable resources and produce little, if any, benefit to the process of determining proper compensation for injured workers.

[¶ 23] TW Services appropriately filed an objection to Mr. Bruns' application for benefits alleging the claimed injury failed to meet the coronary condition requirements of § 27–14–603(b). This objection, duly served on Mr. Bruns' attorney, constituted a pleading as contemplated by *Ireland v. State ex rel. Wyoming Workers' Compensation Division,* 998 P.2d 398 (Wyo.2000). Subsequently, Mr. Bruns filed a traverse to the objection demonstrating actual notice that

---

5. We note the term "objection" is something of an oxymoron in this circumstance where what actually would be filed is more along the line of an "affirmative-objection." This observation merely underlines the futile character of such an artificial requirement.

TW Services intended to litigate the issue. These pleadings gave the parties manifest notice of the nature of claims and defenses, permitted the issues to be narrowed, and guided all concerned in the conduct of the case. *Wesaw*, ¶ 20. Mr. Bruns received adequate notice of the § 27–14–603(b) objection to permit his informed response at the rehearing. Therefore, we conclude the OAH appropriately applied § 27–14–603(b) on rehearing. In so holding, we do not imply the final determination provided insufficient notice to Mr. Bruns that § 27–14–603(b) was at issue. Rather, it is unnecessary to address this question because Mr. Bruns had actual notice through the pleadings filed by TW Services.

## B. Burden of Proof

 [¶ 24] There is no dispute that Mr. Bruns experienced a myocardial infarction. The only remaining questions are whether Mr. Bruns met his burden under § 27–14–603(b) and whether the OAH's decision to deny benefits was arbitrary and capricious. The statutory standard for employment-related coronary conditions [6] requires the employee establish by competent medical authority that

(i) There is a direct causal connection between the condition under which the work was performed and the cardiac condition; *and*

(ii) The causative exertion occurs during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee; *and*

(iii) The acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion.

Section 27–14–603(b) (emphasis added). The statute unequivocally requires the claimant prove the injury meets *all three elements* in order to qualify for benefits. The evidence in the case was distinctly sparse. Mr. Bruns

did not testify, and the record contains no explanation for his absence. His only statements are found in his original claim form and his letter requesting a hearing. The only testimony received was in the form of depositions of two witnesses Dr. Noteboom, the emergency room physician who treated Mr. Bruns on the morning of his heart attack; and Mr. Bruns' supervisor, who testified regarding the normal work duties of a middle porter. In addition, there were medical records from both Livingston Memorial Hospital and Deaconess Medical Center.

[¶ 25] Upon review of both the hearing examiner's numerous and detailed findings and the record, it is evident that the OAH's Order Denying Benefits provides a thorough and accurate appraisal of the evidence as submitted. The order succinctly summarizes the key findings and conclusions which sustain the principal determination that the requirements of § 27–14–603(b) were not met as follows:

30. Bruns has failed to meet his burden as imposed by WYO. STAT. ANN. § 27–14–603(b) (LEXIS 1995). There is no evidence that Bruns experienced an actual period of employment *stress* clearly unusual to, or abnormal for middle porters. In fact all the evidence establishes that he was doing the same work in the same conditions as all other porters. Bruns has failed to establish there was a causative exertion which resulted in the acute event. Dr. Noteboom opined that Bruns' work effort while scrubbing the hot tubs was the causative effort which caused the acute event. However, Dr. Noteboom did not know or could not quantify the work effort exerted while cleaning hot tubs. Bruns' supervisor was familiar with the work effort required in cleaning the hot tubs and she indicated it was a wiping motion while using a sponge. Lastly Bruns has failed to establish the acute symptoms of the coronary condition manifested within four hours of the work effort. There is evidence that Bruns experienced pain while working about 11:00 p.m. However, this

---

6. Employment-related coronary conditions directly and solely caused by an injury are except-ed from these provisions. Section 27–14–603(b).

pain lasted about six minutes, went away and Bruns went home. Some seven hours later, about 6:00 a.m., Bruns awoke experiencing severe chest pains which went away, returned and were then unrelenting. When treated at the emergency room around 8:30 a.m. he was experiencing a myocardial infarction.

This is a fair appraisal of the evidence which was provided to the OAH. The findings are not clearly contrary to the overwhelming weight of the evidence and therefore are accorded due deference. *Hamilton,* ¶ 9.

[¶ 26] Dr. Noteboom's letter dated March 14, 1996, to the division was the only evidence which even arguably supported Mr. Bruns' request for benefits. Dr. Noteboom summarily concluded that the work Mr. Bruns had undertaken that night caused the heart attack without a full understanding of the physical requirements of the work activity. The hearing examiner, as the trier of fact, had the authority to weigh that opinion against the remaining evidence and to conclude it was not adequately supported by facts. *Everheart v. S & L Industrial,* 957 P.2d 847, 852 (Wyo.1998); *see also Krause v. State ex rel. Wyoming Workers' Compensation Division,* 803 P.2d 81, 83 (Wyo.1990). Clearly, this is what occurred. We cannot conclude on the basis of the record that the hearing examiner abused his discretion in determining Mr. Bruns' injury failed to qualify for benefits.

[¶ 27] We note with approval that the OAH's decision went further to evaluate whether Mr. Bruns met his burden of proof on the general issue of compensability. Evidently, this was done in the event it was found on appeal § 27–14–603(b) was not applicable. Analysis of this portion of the OAH's decision is unnecessary, but we commend the thoroughness and the substantial judicial economy the approach promotes.

[¶ 28] Affirmed.