2004 WY 47

**Ronald Eugene LOOMER, deceased, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. 03–26.

Supreme Court of Wyoming.

April 30, 2004.

Representing Appellant: R. Michael Shickich, Casper, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Steve Czoschke, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] Ronald Eugene Loomer drove a truck to Colorado to make a delivery for his employer, TRC Rod Services of the Rockies, Inc. (TRC). While there, he had a heart attack and died. His widow, Sandra Loomer, filed a request for benefits with the Wyoming Workers' Safety and Compensation Division (the Division). After the Division denied benefits, Mrs. Loomer requested a hearing before the Medical Commission (the Commission). The Commission found that although Loomer was initially employed as a pipe inspector, on the day he died he was working as a truck driver. The Commission concluded that Mrs. Loomer had not satisfied the burden of proof set forth in Wyo. Stat. Ann. § 27–14–603(b)(ii) (LexisNexis 2003), requiring that she establish, by a preponderance of evidence, that on the day her husband died he was subject to employment stress "clearly unusual to or abnormal for employees in that particular employment. . . ." Mrs. Loomer appealed the Commission's decision to the district court. The district court affirmed. We will also affirm.

## ISSUES

[¶ 2] Three issues are raised in this appeal:

1. What is the "particular employment," for purposes of Wyo. Stat. Ann. § 27–14–603(b)(ii), of an employee who is hired as a pipe inspector, but who dies of a heart attack while working as a truck driver?

2. Was the Commission's determination that Mr. Loomer's employment stress on the day he died was not clearly abnormal to or unusual for employees in that particular employment supported by substantial evidence?

3. Did the burden of proof shift to the Division after Mrs. Loomer presented her evidence to the Commission?

## FACTS

[¶ 3] In late January or early February of 2001, Mr. Loomer began working for TRC. TRC inspects and delivers pipes and "sucker rods" to oil wells. Mrs. Loomer testified that her husband was hired by TRC as a rod inspector, and indicated that he had been in the "pipe business" for at least twenty-five years.

[¶ 4] TRC's usual truck driver, Jim Dudley, lost his commercial driver's license and could no longer drive the truck used to deliver the rods. Aware that Mr. Loomer had recently obtained a commercial driver's license, TRC asked him to drive the truck and deliver rods to a client in Colorado. Mr. Loomer agreed to make the delivery. Mrs. Loomer testified that before her husband left, he told her that Dudley would accompany him to help unload the rods. For some reason, Dudley did not accompany him, and Mr. Loomer made the trip to Colorado alone.

[¶ 5] Upon arriving in Colorado, Mr. Loomer met Chad Baldwin, an employee of the company that was to receive the rods. Baldwin led Mr. Loomer to the delivery site. Although Baldwin was the only person with firsthand knowledge of what happened at the site that day, he was never deposed or called as a witness to testify. Karen Stricklett, a vocational assessment expert hired by Mrs. Loomer, spoke with Baldwin about the events of that day. Stricklett's report provides an account of her conversation with Baldwin:

When they arrived at the site, Mr. Loomer expressed concern about the fact that there was no one available to assist him with unloading the rods. Mr. Baldwin stated that he offered to help Mr. Loomer, although he had never been involved in this type of activity before. Mr. Baldwin stated that there was no equipment available at the site to assist with unloading. Mr. Loomer proceeded to reconfigure the truck in order to prepare the winch to be used to hoist the bundles of rod onto the ground. According to Mr. Baldwin, the process of disassembling and reconfiguring the truck appeared to involve a significant amount of physical exertion, such as lifting large pieces of pipe from the trailer bed. Shortly after this activity, Mr. Loomer collapsed.

Baldwin gave a similar account to Pam Whitlock, Mrs. Loomer's daughter, when Whitlock called him shortly after Mr. Loomer's death. Whitlock wrote a letter that was submitted to the Commission, in which she described her conversation with Baldwin:

[H]e explained he was under the impression he was only sent to show [Loomer] where the well was, that he was only a pumper.... When they got to the well there wasn't anyone to help unload. [Loomer] knew he needed a[n] empty truck to load for his next trip which he was leaving for the next day to Montana—[Loomer] said I guess we'll have to unload them or let's get started—[Baldwin] explained how [Loomer] said they should wench [sic] the truck up so it might be easier. He told me [Loomer] started complaining he wasn't feeling well and was going to go back to the truck to take some gas pills—[Baldwin] said he offered to take [Loomer] into town—but [Loomer] said no—[Baldwin] knew he just wanted to finish the job so he could get home—he said that was how he would of [sic] felt. They continued to work, I believe it was over an hour and he said on the last load [Loomer] didn't lower the rods he looked up and he was slunched [sic] over.

[¶ 6] An ambulance was called and paramedics unsuccessfully attempted to resuscitate Mr. Loomer. The day after Mr. Loomer's death, Dr. Michael J. Dobersen, M.D., Ph.D., a forensic pathologist with the Arapahoe County Coroner's Office, performed an autopsy and provided the following opinion regarding the cause of death:

This 53–year–old man was witnessed to collapse after complaints of not feeling well. He was pronounced dead a short time later at the scene despite resuscitative measures. His death is attributed to severe two-vessel coronary artery atherosclerosis due to arteriosclerotic cardiovascular disease. Toxicologic analyses of body fluids obtained at the time of autopsy were negative. In view of the scene and

circumstances surrounding the death and autopsy findings, the manner of death is classified as natural.

[¶ 7] Shortly after her husband's death, Mrs. Loomer filed a request for death benefits with the Division. TRC submitted a letter acknowledging that Mr. Loomer died while performing his job, but maintaining that his heart attack was not the result of any unusual stress or activity. The letter stated that driving the truck and unloading rods was "a normal task that he had done many times in the past." The Division, citing Wyo. Stat. Ann. § 27–14–603(b), concluded "[n]o [c]ausative exertion clearly unusual or abnormal for employees in this particular employment has been documented," and denied benefits.

[¶ 8] Mrs. Loomer objected to the Division's determination and requested a hearing before the Commission. Mrs. Loomer and the Division each submitted disclosure statements,[1] and a hearing was held. After opening statements by both attorneys, Mrs. Loomer testified first. She explained that her husband was hired by TRC as a pipe inspector, but that on the day he died he was working as a truck driver. She testified that prior to this instance, her husband had never driven the delivery truck for TRC. She also stated that Dudley was supposed to accompany Mr. Loomer to Colorado and help him unload the rods, but did not go.

[¶ 9] After Mrs. Loomer testified, Dr. Dobersen was called. Dr. Dobersen explained his autopsy revealed that severe coronary artery disease caused Mr. Loomer to have an acute heart attack. He then testified that the heart attack was "brought upon by the exertion of his carrying out the job that he was involved in."

[¶ 10] The final witness was Karen Stricklett, a vocational rehabilitation specialist hired by Mrs. Loomer to "assess Mr. Loomer's job and determine whether what he was doing on the day that he died was usual and customary for that particular posi-

---

1. Both disclosure statements provided a list of anticipated witnesses and exhibits. Mrs. Loomer's statement listed eight exhibits and named Mrs. Loomer, Pam Whitlock, Dr. Dobersen, and Karen Stricklett as potential witnesses. The Di-

vision listed six exhibits and named Mrs. Loomer as a potential witness and "[s]uch rebuttal witnesses as appropriate to rebut evidence...." The Commission received the disclosure statements and admitted all exhibits into evidence.

tion." Stricklett had researched the Internet and conducted a labor market survey to find job descriptions for a pipe inspector and truck driver, and to determine the normal and usual level of exertion for both occupations. Stricklett explained that, as defined in the Dictionary of Occupational Titles, Fourth Edition, pipe inspector is classified as "light work," and truck driver is classified as "medium work...." She then testified that, in her opinion, Mr. Loomer's exertion on the day he died was abnormal and unusual because he was hired as a pipe inspector—a light work occupation, but was working as a truck driver—a medium work occupation.

[¶ 11] Stricklett also testified that her research revealed the industry standard for unloading rods from trucks is to use "equipment and normally a forklift." She then opined that Mr. Loomer's employment stress was abnormal and unusual even for a truck driver because he did not use a forklift to unload the rods. However, upon further questioning, she acknowledged that a winch truck, like the one Mr. Loomer was using, could be used rather than a forklift:

> Q Okay, I guess I am still confused. You're saying that even if they have a winch truck, they take a second truck and they drive a forklift out to that site?
>
> A Oh, I understand your question. I'm sorry, I misunderstood. When I talked with the employers, none of them used a winch truck. They all used a forklift. And the first that I heard of a winch truck was with this particular employer. So the employers that I spoke with did not use winch trucks, they used forklifts. So I can't really say whether both pieces of equipment would commonly be used. My understanding is probably not, based upon the people that I did talk with. So apparently it's one or the other, I suppose.
>
> Q And I guess—so you're not intimately familiar with the piece of equipment they were using that day on the site; is that correct?

A That's correct.

She concluded, "the physical activities that Mr. Loomer was performing on that day were inconsistent with [her] understanding of the typical physical demands of that particular position."

[¶ 12] After Stricklett's testimony, Mrs. Loomer closed and the Division rested without presenting further evidence or calling any witnesses.[2] Both attorneys offered closing statements and the Commission took the matter under advisement.

[¶ 13] On April 12, 2002, the Commission issued its Findings of Fact, Conclusions of Law and Order of Medical Commission Hearing Panel. The Commission denied benefits. Citing *Pederson v. State ex rel. Wyoming Workers' Compensation Div.*, 939 P.2d 740, 742 (Wyo.1997), the Commission noted that a claimant requesting benefits has the burden of proving all essential elements of the claim by a preponderance of the evidence. The Commission specifically found that "Stricklett's testimony was not credible regarding the exertional work stresses that were utilized by Mr. Loomer on the date of his death. Too many questions remain unanswered about the level of work and the anticipated exertional stress that would have been engaged in by Mr. Loomer." It then concluded, the claimant "has not met her burden of proof in establishing that Mr. Loomer was engaging in tasks at a level that is 'clearly unusual to or abnormal for employees in that particular employment.'"

[¶ 14] On June 7, 2002, Mrs. Loomer filed a petition for review in the district court. The district court affirmed the Commission's decision. This appeal followed.

## STANDARD OF REVIEW

[¶ 15] W.R.A.P. 12.09(a) limits our review of administrative decisions to a determination of those matters specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2003).[3]

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the

---

2. The six exhibits listed in the Division's disclosure statement had already been admitted into evidence.

3. Wyo. Stat. Ann. § 16–3–114(c) provides as follows:

*State ex rel. Wyoming Workers' Compensation Div. v. Brewbaker,* 972 P.2d 962, 963–64 (Wyo.1999). In *Hoff v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 2002 WY 129, ¶¶ 5–8, 53 P.3d 107, 109–10 (Wyo.2002), we reiterated the proper application of the substantial evidence and arbitrary and capricious standards of review:

> Our standard of review when reviewing administrative agency action was recently clarified in the case of *Newman v. State ex rel. Workers' Safety and Compensation Div.,* 2002 WY 91, 49 P.3d 163 (Wyo. 2002). . . .

> In appeals where both parties submit evidence at the administrative hearing, *Newman* mandates that appellate review be limited to application of the substantial evidence test. *Newman,* 2002 WY 91, ¶ 22, 49 P.3d 163. This is true regardless of which party appeals from the agency decision. In addition, this court is required to review the entire record in making its ultimate determination on appeal. *Newman,* at ¶ 19 and ¶¶ 24–26.

> The substantial evidence test to be applied is as follows:

> > "In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence."

> *Newman,* at ¶ 12 (*quoting State ex rel. Workers' Safety and Compensation Div. v.*

following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

*Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)).

Even when the factual findings are found to be sufficient under the substantial evidence test, *Newman* further concludes this court may be required to apply the arbitrary-and-capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards.

Because Mrs. Loomer and the Division both presented evidence, in the form of witnesses or exhibits, we will review the Commission's decision under the substantial evidence standard. Although the district court upheld the Commission's determination, we afford no deference to conclusions reached by the district court, but review the case as if it had come directly from the agency. *Brewbaker,* 972 P.2d at 964.

## DISCUSSION

[¶ 16] Wyo. Stat. Ann. § 27–14–603(b) provides that worker's compensation benefits for employment-related coronary conditions are only available where the claimant establishes by competent medical authority that:

(i)There is a direct causal connection between the condition under which the work was performed and the cardiac condition; and

(ii)The causative exertion occurs during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee; and

(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

(iii)The acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion.

[¶ 17] Originally enacted in 1969, Wyo. Stat. Ann. § 27–14–603(b) adopted the "unusual-exertion" rule. *Mor, Inc. v. Haverlock,* 566 P.2d 219, 221–22 (Wyo.1977); *see also,* Patrick J. Crank and Kenneth R. Buck, Comment, *The Compensability of Cardiac Conditions Under Wyoming Worker's Compensation: Health Insurance or Worker's Compensation?,* XX Land & Water L.Rev. 607, 614 (1985). For a claimant to qualify for worker's compensation benefits under this rule, he or she must demonstrate that the work-related coronary condition resulted from an unusual exertion. *Id.* at 613. Two methods have been used to ascertain when an employee's specific exertion is unusual: a subjective and an objective test. *Id.* at 614. The subjective test determines whether a specific exertion is unusual by comparing the employee's exertion at the time of the heart attack to the level of exertion to which *that particular employee* is accustomed. *Mor, Inc.,* 566 P.2d at 222. The objective test, on the other hand, compares the employee's specific exertion to the usual exertion of *other employees engaged in the same or similar activity.* *Matter of Desotell,* 767 P.2d 998, 1001 (Wyo.1989).

[¶ 18] In the original version of Wyo. Stat. Ann. § 27–14–603(b), the legislature used language consistent with the subjective test:

No benefits for cardiac conditions, except those directly and solely caused by a traumatic accident, shall be compensable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, *the individual employee* in that particular employment....

Wyo. Sess. Laws ch. 200, § 15 (1969) (emphasis added). In *Mor, Inc.,* the first case to interpret the 1969 statute, we adopted the subjective test, holding that the exertion "must only be unusual *to the employee*—it need not necessarily be unusual to others engaged in the same employment." *Mor, Inc.,* 566 P.2d at 222 (emphasis in original). Then, in 1977, the legislature amended Wyo. Stat. Ann. § 27–14–603(b) to read, in pertinent part: "the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, *employees in that particular employment* ...." Wyo. Sess. Laws ch. 142, § 1 at 467 (1977) (emphasis added). In *Claim of McCarley,* 590 P.2d 1333, 1335 (Wyo.1979), we recognized that the amended statute set forth an objective test. Nonetheless, a number of post-*McCarley* decisions continued to use the subjective test from the previous version of the statute. *See Creek v. Town of Hulett,* 657 P.2d 353, 356 (Wyo.1983); *Yost v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Div.,* 654 P.2d 137, 140 (Wyo.1982); *Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Div. v. Schwilke on Behalf of Schwilke,* 649 P.2d 218, 221–22 (Wyo.1982); and *Jim's Water Service v. Eayrs,* 590 P.2d 1346, 1349 (Wyo.1979). In 1989, we expressly adopted the objective test and noted the prior misapplication of the subjective test stating, "[t]his court erred in *Schwilke* and *Yost* by misreading the clear 1977 legislative mandate requiring claimants to prove 'an actual period of employment stress' based on an objective standard and by applying the superseded subjective test...." *Matter of Desotell,* 767 P.2d at 1002.

[¶ 19] Wyo. Stat. Ann. § 27–14–603(b)(ii) again was amended in 1986 to read: "The causative exertion occurs during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, *irrespective of whether the employment stress is unusual to or abnormal for the individual employee* [.]" Wyo. Sess. Laws, sp. sess. ch. 3, § 3 at 37 (1986) (emphasis added). The new language emphasized above clearly indicates the legislature's intent to adopt the objective test, and since the 1986 amendment, we have consistently used the objective test when applying Wyo. Stat. Ann § 27–14–603(b). *See Bruns*

v. TW Services, Inc., 2001 WY 127, ¶ 25, 36 P.3d 608, 616 (Wyo.2001); Sheth v. State ex rel. Wyoming Workers' Compensation Div., 11 P.3d 375, 379–80 (Wyo.2000); Brewbaker, 972 P.2d at 964; and State ex rel. Wyoming Workers' Compensation Div. v. Harris, 931 P.2d 255, 258–59 (Wyo.1997).

[¶ 20] The Commission determined that Mrs. Loomer had not met her burden of proving the elements of Wyo. Stat. Ann § 27–14–603(b). She now argues that this decision should be reversed based on three theories. First, she asserts that the Commission improperly interpreted the meaning of "particular employment" as used in Wyo. Stat. Ann § 27–14–603(b)(ii), claiming that, although her husband was working as a truck driver when he died, his "particular employment" was that of a pipe inspector, and the employment stress causing his heart attack was clearly unusual to and abnormal for a pipe inspector. Second, she maintains that even if her husband's "particular employment" on the day he died was that of a truck driver, the employment stress was clearly unusual to or abnormal even for a truck driver because he did not have the aid of an assistant or a forklift when he unloaded the rods. Finally, Mrs. Loomer contends that after she presented her case to the Commission, the burden of proof shifted to the Division and the Division failed adequately to rebut her evidence.

## WHAT WAS LOOMER'S "PARTICULAR EMPLOYMENT" WHEN HE SUFFERED A HEART ATTACK?

[¶ 21] It is undisputed that Mr. Loomer was hired by TRC as a pipe inspector. While there is some disagreement about the number of times Mr. Loomer had driven the delivery truck for TRC before he died, both parties acknowledge that on the day of his heart attack, Mr. Loomer was working as a truck driver. Mrs. Loomer contends that, for purposes of Wyo. Stat. Ann § 27–14–603(b)(ii), "particular employment" should be read to mean the job for which the employee was originally hired, rather than the particular task he was performing at the time of the heart attack. She notes that her husband was hired as a pipe inspector, a "light" level physical exertion job, and that truck driving

is classified as a "medium" level job in the Dictionary of Occupational Titles. Mrs. Loomer argues that the Commission should have determined that her husband's "particular employment" was a pipe inspector, and she claims that "[t]he stress, toil and exertion involved with unloading pipes from a truck was well beyond what was usual or normal for pipe inspecting."

[¶ 22] While this argument may have merit under a subjective standard, it is misplaced in an objective analysis. Under the prior subjective test, a claimant could argue that he was not hired to do this particular type of work, and therefore, the employment stress was unusual and abnormal to him because *he* was not accustomed to the level of exertion required. However, the objective test asks only whether the exertion is "clearly unusual to or abnormal for employees in *that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee* [.]" Wyo. Stat. Ann. § 27–14–603(b)(ii) (emphasis added). Asking what job Mr. Loomer was originally hired to do, the type of work to which he was accustomed, and whether truck driving is a more physically demanding job than pipe inspecting, all relate to whether the employment stress was clearly unusual to or abnormal for *Mr. Loomer*. Yet, the objective test examines only whether the employment stress causing the heart attack was abnormal or unusual for *that particular employment* "it does not focus on the activities or characteristics of an individual employee." *Harris*, 931 P.2d at 259.

[¶ 23] We hold that under the objective test set forth in Wyo. Stat. Ann § 27–14–603(b)(ii), a claimant's "particular employment" is the job he is performing at the time of the causative exertion. Any other interpretation of the statute would negate clear legislative intent. *See Yost*, 654 P.2d at 143 (Rooney, J.; dissenting). Mr. Loomer's "particular employment" at the time of the causative exertion was that of a truck driver. In *Brewbaker*, a case factually similar to the present case, the claimant was a truck driver who agreed temporarily to perform welding tasks for his employer. *Brewbaker*, 972 P.2d at 963. While performing a particularly

strenuous welding job in inclement weather conditions, the claimant suffered a heart attack. *Id.* We reversed a denial of benefits and stated, "[i]ndeed, the only evidence before the hearing examiner was that the project was over and above the range of 'heavy labor' *normally required for a welding project."* *Id.* at 965 (emphasis added). We also found "no evidence to support the hearing examiner's determination that lifting 300 pound steel plates in freezing weather for three hours is *usual or normal stress in the welding profession."* *Id.* (emphasis added). While we acknowledge that *Brewbaker* is not directly on point, as we were not expressly addressing the meaning of "particular employment" as used in Wyo. Stat. Ann § 27–14–603(b)(ii), we note that in that case we considered "particular employment" to be the job in which the claimant was engaged at the time of the heart attack, not the job for which he was originally hired.

### WAS THE COMMISSION'S DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE?

[¶ 24] When Mr. Loomer suffered his heart attack, his particular employment was that of a TRC truck driver. Therefore, we must now determine whether there is substantial evidence to support the Commission's determination that the employment stress Mr. Loomer experienced was neither abnormal to nor unusual for a TRC truck driver. In *Matter of Desotell,* 767 P.2d at 1002, we described what a claimant must prove to satisfy the requirements of Wyo. Stat. Ann § 27–14–603(b):

Given the way the statute is phrased, the claimant must first prove that the injured employee experienced an "actual period of employment *stress* clearly unusual to, or abnormal for, employees in that particular employment * * *." Next, and only after proof of the first requirement, the claimant must establish legal causation, by proving a "causative exertion" during the proven period of actual unusual or abnormal stress. Then, the claimant must establish medical causation, by introducing competent medical testimony evidencing a direct causal connection between the causative exertion and the coronary condition. Last, the claimant must introduce evidence

showing that the acute symptoms of that coronary condition were manifested within four hours of the causative exertion. *State, ex rel. Wyoming Worker's Compensation Division v. Van Buskirk,* 721 P.2d 570, 572 (Wyo.1986) first analyzed as a four-part test in *Claim of McCarley,* 590 P.2d 1333, 1335–336 (Wyo.1979).

(Emphasis in original.) *See also Sheth,* 11 P.3d at 379 and *Harris,* 931 P.2d at 258–59. As the claimant, Mrs. Loomer had the burden to prove, by a preponderance of the evidence, all the above elements. *Bruns,* 2001 WY 127, ¶ 12, 36 P.3d at 613. This standard requires that she present evidence that would lead the trier of fact to conclude that the existence of the contested fact is more probable than its nonexistence. *Id.,* 2001 WY 127, ¶ 13, 36 P.3d at 613.

[¶ 25] As indicated above, Mrs. Loomer's first task was to prove that her husband experienced an actual period of employment stress clearly unusual to or abnormal for a TRC truck driver. *Matter of Desotell,* 767 P.2d at 1002. Mrs. Loomer contends that her husband's employment stress was abnormal and unusual for two reasons: he did not have the assistance of another employee when he unloaded the truck and no forklift was available to unload the truck. One of the exhibits presented to the Commission was a TRC job description for "Truck Driver." Two of the tasks listed in that exhibit are "set up gin poles and unload rods where customer designates" and "[c]ontrol and be responsible for swamper (if provided)." Gin poles are part of the winch system on a winch truck and swampers are assistants. This job description clearly indicates that reconfiguring and unloading the truck is a normal and usual task for a TRC truck driver. Additionally, the parenthetical language "if provided" indicates that a swamper is not always provided. While it may be true that Dudley was supposed to go with Mr. Loomer to help unload, nothing in the record demonstrates that a TRC truck driver's employment stress becomes unusual or abnormal if he does not have the assistance of a swamper.

[¶ 26] In her next argument, Mrs. Loomer relied on the report and testimony of Stricklett to claim that a truck driver's employment stress is abnormal and unusual if he does not use a forklift to unload oil-well rods. Stricklett testified that the industry standard for unloading rods from trucks is to use "equipment and normally a forklift." However, of the thirty-four employers she contacted, only four said they used a forklift to unload trucks. When asked whether a company that uses a winch truck rather than a forklift would be required to have both available, Stricklett responded that it would have to have "one or the other...." Finally, she conceded that if TRC truck drivers normally unloaded their trucks the way Mr. Loomer had, using a winch truck, there would be no unusual employment stress.

[¶ 27] The Commission found Stricklett's knowledge with respect to the equipment Mr. Loomer was using inadequate and noted that "[n]owhere in her report is it indicated that forklifts are used to unload pipe at an oil field location." Also, the Commission specifically found aspects of Stricklett's testimony "not credible" and concluded that Mrs. Loomer had not met her burden of establishing that the absence of a forklift made her husband's work "clearly unusual to or abnormal for employees in that particular employment." The Commission, "as the trier of fact, had the authority to weigh [an expert's] opinion against the remaining evidence and to conclude it was not adequately supported by facts." *Bruns*, 2001 WY 127, ¶ 26, 36 P.3d at 617.

[¶ 28] The Commission determined that Mrs. Loomer had not shown, by a preponderance of the evidence, that the absence of an assistant or a forklift made a TRC truck driver's employment stress abnormal and unusual. Affording appropriate deference, we find neither determination arbitrary and capricious and hold that both were supported by substantial evidence.

**DID THE BURDEN OF PROOF SHIFT TO THE DIVISION?**

[¶ 29] Finally, Mrs. Loomer contends that the Commission's decision should be reversed because after she presented her case, the burden of proof shifted to the Division and it failed to rebut the evidence presented. She quotes *Sellers v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 979 P.2d 959, 961 (Wyo.1999), "[o]nce the claimant has satisfied this burden, the burden shifts, requiring the Division to produce evidence that the injury is excluded from the Act's coverage...." However, the burden does not shift upon presentation of *any* evidence; it shifts only if the claimant has proven all the essential elements of her claim. *Id.; In re Helm*, 982 P.2d 1236, 1241 (Wyo.1999). Mrs. Loomer failed to prove all the elements of her claim, and therefore, the burden never shifted to the Division.

**CONCLUSION**

[¶ 30] The phrase "particular employment" as found in Wyo. Stat. Ann. § 27–14–603(b)(ii) means the task being performed at the time of the causative exertion. Consequently, a claimant must prove exertion that is clearly unusual to or abnormal for employees performing that task as opposed to employees performing the job for which that claimant may originally have been hired. In the instant case, Mrs. Loomer did not prove all the elements of her claim and the burden of proof did not shift to the Division. The order of the district court affirming the Commission is affirmed.