2008 WY 125

**In the Matter of the Worker's Compensation Claim of Carl L. BALDWIN.**

**State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellant (Petitioner),**

v.

**Carl L. Baldwin, Appellee (Respondent).**

No. S–07–0284.

Supreme Court of Wyoming.

Oct. 10, 2008.

Representing Appellant: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General.

Representing Appellee: Donna D. Domonkos, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Carl L. Baldwin (Baldwin) suffered a work-related injury and temporary total disability benefits were approved. After receiving a permanent partial impairment rating, Baldwin applied for permanent partial disability (PPD) benefits.[1] The Workers' Safety and Compensation Division (the Division) denied benefits on the ground that he could return to his previous employment. A contested case hearing was held, after which the hearing examiner reversed the Division's decision and awarded Baldwin PPD benefits. The district court affirmed and the Division has appealed to this Court. We conclude the hearing examiner's decision awarding PPD benefits to Baldwin was supported by substantial evidence and in accordance with the law.

## ISSUES

[¶ 2] The Division presents two issues for review:

1. Whether the hearing examiner's decision granting permanent partial disability benefits to Baldwin is in accordance with the law?

2. Whether substantial evidence supports the hearing examiner's decision granting permanent partial disability benefits to Baldwin?

---

1. "Permanent partial disability" is defined as "the economic loss to an injured employee ... resulting from a permanent physical impairment[.]" Wyo. Stat. Ann. § 27–14–102(a)(xv) (Lexis Nexis 2005). *See also, Phillips v. TIC,* 2005 WY 40, ¶ 29, 109 P.3d 520, 533 (Wyo.2005).

## FACTS

[¶3] On August 11, 2003, Baldwin suffered a work-related injury to his lower back. He was examined by Dr. Ludwig Kroner and diagnosed with left-sided radiculopathy with severe muscle spasm and neurological deficit. After Baldwin was unresponsive to conservative treatment, Dr. Kroner performed a left-sided L5–S1 laminotomy, discectomy, and nerve root decompression on Baldwin's lower back. Ten weeks after the surgery, Dr. Kroner examined Baldwin and found that he was able to walk on his heels and toes, squat, and bend forward to his ankles. Baldwin reported "a little bit" of pain in the left side of his lower back and buttock, but no radicular pain. Dr. Kroner released Baldwin to work on December 15, 2003.

[¶4] At the Division's request, on February 11, 2004, Dr. Paul E. Ruttle performed an Orthopedic Medical Evaluation of Baldwin. Dr. Ruttle reviewed Baldwin's medical records, conducted an interview, and performed a physical examination. Dr. Ruttle concluded that Baldwin had suffered an 11% whole person impairment. Dr. Ruttle advised that Baldwin could return to work as an oilfield laborer, but advised against lifting greater than 60 pounds on a one-time basis, or 40 pounds on a repetitive basis. Dr. Ruttle submitted his report to the Division on February 20, 2004.

[¶5] On October 8, 2004, Baldwin submitted an application for a PPD award. On October 12, 2004, the Division issued a Final Determination denying the application on the ground that "[y]ou do not meet the eligibility requirements for PPD. Medical evidence indicates that you can return to your previous occupation, and were assigned no permanent restrictions that preclude your return to employment to which you are suited." On October 25, 2004, Baldwin requested a hearing and his case was referred to the Office of Administrative Hearings (OAH) for a contested case hearing and final determination.

[¶6] On April 2, 2005, Baldwin participated in a vocational assessment. The vocational evaluator concluded that jobs for which Baldwin would likely qualify, given his health restrictions and skill set, would pay between $7 to $10 per hour, with some paying high-er—up to $20 per hour depending on experience. The evaluator also attached a list of potential employers. The vocational report was submitted to the Division.

[¶7] On January 12, 2006, the OAH held a contested case hearing. The hearing examiner issued Findings of Fact and Conclusions of Law on August 29, 2006, awarding PPD benefits to Baldwin. The Division filed a petition for review and the district court affirmed the OAH's decision on October 22, 2007. The Division filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶8] W.R.A.P. 12.09(a) directs us to Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007) for the matters to be considered in the review of administrative action. We recently said the following with regard to the standard of review when we are required to examine the evidentiary findings of an agency:

> Section 16–3–114(c)(ii) provides only one evidentiary standard of review. Under the plain language of the statute, reversal of an agency finding or action is required if it is "not supported by substantial evidence." Because contested case hearings under Wyoming's Administrative Procedures Act, are formal, trial-type proceedings, use of the substantial evidence standard for review of evidentiary matters is more in keeping with the original intent of the drafters of the administrative procedures act. 33 Fed. Prac. & Proc., Judicial Review §§ 8333, 8334.
>
> Thus, in the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling. When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a rea-

sonable mind might accept in support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.,* 882 P.2d 858, 860–61 (Wyo.1994); *[Board of Trustees of Laramie County School Dist. No. 1 v.] Spiegel,* 549 P.2d [1161,] 1178 [ (Wyo.1976) ] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision  making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale v. S & S Builders, LLC,* 2008 WY 84, ¶¶ 21–22, 188 P.3d 554, 561 (Wyo.2008).[2] An agency's conclusions of law are reviewed *de novo,* and are affirmed if they are in accordance with the law. *Id.,* 2008 WY 84, ¶ 26, 188 P.3d at 562. "[W]e afford no deference to conclusions reached by the district court, but review the case as if it had come directly from the agency." *Loomer v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2004 WY 47, ¶ 15, 88 P.3d 1036, 1041 (Wyo.2004).

*Gray v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2008 WY 115, ¶ 5, 193 P.3d 246, 248 (Wyo.2008).

## DISCUSSION

[¶ 9] The Division does not dispute that Baldwin was injured or that his injuries were work related; rather, the Division takes exception to the hearing examiner's award of PPD benefits, which action is governed by Wyo. Stat. Ann. § 27–14–405(h)(i) and (iii) (LexisNexis 2007):

> (h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:
>
> > (i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;
> >
> > . . . .
> >
> > (iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

### Actively Sought Suitable Work

[¶ 10] As the above statute indicates, when awarding PPD benefits, the hearing examiner is required to determine whether a claimant has actively sought suitable work. *See Hermosillo v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 175, ¶ 9, 58 P.3d 924, 927 (Wyo.2002). We have said that "[t]here is no magic formula for what constitutes 'actively seeking suitable work' and no particular level of education, training or experience is required to decipher the phrase. One is either actively looking for work, or one is not." *Abeyta v. State ex. rel. Wyo. Workers' Safety & Comp. Div.,* 2004 WY 50, ¶ 11, 88 P.3d 1072, 1076 (Wyo.2004)

[¶ 11] The Division argues that the decision that Baldwin actively sought suitable work was not supported by substantial evidence, as the hearing examiner failed to make findings of basic fact on this issue. We disagree. With regard to Baldwin's efforts to seek employment, the hearing officer made the following findings:

2. Although not relevant in the instant case, the "arbitrary and capricious" standard remains as a "safety net" for certain agency action that may be related to the evidence, but which action is not a true evidentiary question. *Dale,* 2008 WY 84, ¶ 23, 188 P.3d at 561.

3. The Claimant testified that at the time of the injury he was making $17.00 an hour. He was working 21 days on and then 7 days off, 8 hours a day. He has since the injury sought employment. He worked in a carpentry shop for 5 months and was terminated. He sought other employment where he was working as a maintenance man at $14.00 an hour doing light duty work. He also testified that he had 10 years of carpenter experience with the union. However, he also testified that there are no union jobs that would meet his limitations.

The evidence presented at the contested case hearing supports the conclusion that Baldwin sought employment since his injury. Baldwin testified at the hearing as follows:

Q What did your job search consist of?

A I went to the Unemployment Office and filed with the Unemployment Office, I looked through the newspaper looking for, you know, jobs that I could possibly do, I called on the telephone many a time looking for a job.

Q Did you fill out applications?

A Yes, I have filled out many applications.

Also, Baldwin testified that he had registered with the Wyoming Job Network and described a number of employers whom he had contacted. The hearing examiner found Baldwin to be credible.

[¶ 12] The Division cites three cases, *Abeyta v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 50, 88 P.3d 1072 (Wyo.2004), *Ludwig v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 34, 86 P.3d 875 (Wyo.2004), and *Hermosillo v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 175, 58 P.3d 924 (Wyo.2002), to support its argument that Baldwin failed to establish that he actively sought suitable work. In each of the cases, the hearing examiner determined the claimant failed to demonstrate that he actively sought suitable work. *Abeyta*, 2004 WY 50, ¶ 5, 88 P.3d at 1074; *Ludwig*, 2004 WY 34, ¶ 3, 86 P.3d at 877; *Hermosillo*, 2002 WY 175, ¶ 5, 58 P.3d at 925–26. In contrast, the hearing examiner in Baldwin's case found that he successfully demonstrated that he had actively sought

suitable employment. Giving necessary deference to the hearing examiner's credibility and factual determinations, we hold that the conclusion that Baldwin actively sought suitable work is supported by substantial evidence.

[¶ 13] The Division also argues that the hearing examiner committed an error of law when he cited the wrong definition of "actively seeking work" from the Wyoming Workers' Compensation Rules and Regulations. The definition cited by the hearing examiner was that used in *Olivas v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 29, 130 P.3d 476 (Wyo.2006), and reads:

For purposes of benefit eligibility, an individual is actively seeking work if they:

(i) Have engaged in a systematic and sustained effort to obtain work;

(ii) Register[ ] for work and continue[ ] to report to a department office in effort to obtain suitable employment;

(iii) Are available for suitable employment;

(iv) Furnish[ ] the department with tangible evidence of their effort; *or*

(v) Have contacted the employer from the time of injury to inquire if they have work available within their medically documented restrictions.

*Id.*, 2006 WY 29, ¶ 14, 130 P.3d at 483 (emphasis in original). This rule was amended in 2001 to change the word "or" to "and." Because Baldwin's injury occurred in 2003, the amended rule should have been cited.

[¶ 14] Although the hearing examiner cited to the older version of the rule, his application of the rule is consistent with the proper definition. The hearing examiner found that Baldwin continued to seek appropriate work, as required by paragraph (i). He referred to Baldwin's registration with the Wyoming Job Network, as required by paragraph (ii). Baldwin's availability for suitable employment, as required by paragraph (iii), is not contested by the Division. The hearing examiner discussed and referred to the tangible evidence of his job search efforts (work search record) provided to the depart-

ment as required by paragraph (iv). Finally, the hearing examiner addressed requirement (v) when he found that there was limited work available within Baldwin's medically documented restrictions. As such, we conclude that if error did occur, it did not affect the analysis or ultimate outcome and was therefore harmless. *See RK v. State ex rel. Natrona County Child Support Enforcement Dep't,* 2008 WY 1, ¶¶ 17–20, 174 P.3d 166, 171 (Wyo.2008); *Walton v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2007 WY 46, ¶ 37, 153 P.3d 932, 940 (Wyo.2007); *Chapman v. Meyers,* 899 P.2d 48, 52 (Wyo.1995).

### Return to work at 95% of pre-injury wage

▇▇▇ [¶ 15] "[W]hen an injury deprives the worker of the ability to rely on prior experience and training in a particular occupation, which results in a decrease of the worker's earning capacity, the injured workman is entitled to compensation." *State ex rel. Wyo. Workers' Comp. Div. v. Borodine,* 784 P.2d 228, 230 (Wyo.1989). To be awarded PPD benefits, Baldwin had to show that he was unable to return to employment at a wage that was at least 95% of his pre-injury wage. Wyo. Stat. Ann. § 27–14–405(h)(i) (LexisNexis 2007).

> Impairment of earning capacity is determined by taking into consideration the following factors:
>
>   (a) Physical impairment—the nature and extent of injury.
>
>   (b) The worker's age.
>
>   (c) The worker's education.
>
>   (d) Ability to continue pre-injury employment.
>
>   (e) Post-injury employment prospects.
>
>   (f) Pre-injury earnings.
>
>   (g) Post-injury earnings.
>
> No single factor of those listed above is determinative of the extent or existence of loss of earning capacity. They are all evidence to be considered together with all of the other facts and circumstances in determining whether a loss of earning capacity in fact occurred and, if so, the percentage of loss.

*State ex rel. Wyo. Worker's Comp. Div. v. White,* 837 P.2d 1095, 1097 (Wyo.1992). "The extent of the injured worker's disability pursuant to the loss of earning requirement becomes a question of fact. Any evidence, medical and non-medical, that is relevant may be considered by the hearing officer." *Borodine,* 784 P.2d at 231.

[¶ 16] Baldwin was earning $17.00 per hour when he was injured. To qualify for PPD, Baldwin was required to show that he was unable to secure employment at a wage equal to 95% of his pre-injury pay—$16.15 per hour. The hearing examiner concluded that Baldwin satisfied this requirement. The Division contends that the hearing examiner's decision is not supported by substantial evidence because he failed to consider the vocational evaluation, which listed jobs paying over 95% of Baldwin's pre-injury wage. Additionally, the Division contends that the hearing examiner failed properly to resolve conflicting medical reports concerning Baldwin's physical limitations.

[¶ 17] With regard to the medical evidence and availability of jobs, the hearing examiner found:

> 14. The medical evidence further supports the Claimant's limited employment. The Office points out that Dr. Kroner's evaluation of [Baldwin] stated that the Claimant would have no restrictions, but does not appear to be very detailed and is discounted by the Office. On the other hand, Dr. Ruttle's observation was that the Claimant could return to his job in the oilfield but that he has lifting restrictions of 60 pounds once a day and 40 pounds repetitively. The Office questions the value of Dr. Ruttle's opinion as to the Claimant returning to a job in the oilfield; in that the Office questions Dr. Ruttle's knowledge as to the actual functional capacity oilfield employment entails. Nevertheless, Dr. Ruttle's testimony as to the Claimant's physical limitations is conclusive.
>
> 15. The employment available to the Claimant is limited to heavy manual labor. The above mentioned factors restrict the type of employment available to the Claimant. In addition, his percentage of physical impairment and lifting restrictions limit these employment options further.

16. Therefore, the Office does conclude that the Claimant had lifting restrictions as a result of his work related accident. These restrictions resulted in his being unable to return to employment at a rate within 95% of the amount he was making at the time of his injury, which was $17.00 an hour. Most of the jobs that appeared on the job search records were in the $12.00–to–$14.00 an hour range if they could accommodate the Claimant's limitations. Therefore, the Office finds that the Claimant has shown by substantial evidence that he is eligible for a permanent partial disability award and benefits should be awarded accordingly.

▉ [¶ 18] It is true that there was conflicting medical evidence concerning Baldwin's physical limitations. In December of 2003, Dr. Kroner released Baldwin to work without restriction. Then, in February of 2004, as the result of an Orthopedic Medical Evaluation, Dr. Ruttle imposed certain physical restrictions. As the finder of fact, it is the hearing examiners duty to weigh the evidence and resolve such conflicts. *Kuntz–Dexter v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 101, ¶ 12, 49 P.3d 190, 193 (Wyo.2002). The hearing examiner addressed the conflicting evidence when he discounted Dr. Kroner's opinion because of its lack of detail and accepted the restrictions imposed by Dr. Ruttle. While the evidence was such that the hearing examiner could have reasonably accepted Dr. Kroner's opinion and disregarded the opinion of Dr. Ruttle, "the possibility of drawing two inconsistent conclusions from a body of evidence does not prevent a finding that the conclusion drawn by the administrative agency was supported by substantial evidence." *Vandehei Developers v. Pub. Serv. Comm'n of Wyo.*, 790 P.2d 1282, 1287 (Wyo.1990).

[¶ 19] The Division also asserts that the hearing examiner failed properly to consider the vocational evaluation. We find this contention to be without merit. Citing *Lunde v. State ex. rel. Wyo. Workers' Comp. Div.*, 6 P.3d 1256 (Wyo.2000), the hearing examiner stated: "Vocational evaluations should be based on available jobs in Wyoming, and evaluation of such jobs must be conducted with some basis in reality which gives recognition to the worker's disability." The vocational evaluation stated: "Labor market research indicated that jobs, for which Mr. Baldwin would likely qualify, would pay between $7–$10 an hour, with some jobs paying higher, i.e. up to $20 an hour depending on experience." Our review of the record and the job listings provided in the vocational evaluation reveals that the bulk of the jobs for with Baldwin would qualify were in the $7–$10 range. The "up to $20" jobs were more skilled positions requiring experience, or oilfield jobs for which Baldwin would not qualify because of his physical restrictions. Thus, the hearing examiner's determination that Baldwin could not return to employment at 95% of his pre-injury wage is supported by substantial evidence.

## CONCLUSION

[¶ 20] The hearing examiner's findings that Baldwin was actively seeking suitable employment and that he was unable to return to work at a job paying at least 95% of his pre-injury wage were supported by substantial evidence and in accordance with the law. Therefore, the award of PPD benefits to Baldwin is affirmed.