# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 88

APRIL TERM, A.D. 2019

September 3, 2019

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

KENNETH J. BOLLINGER,

Appellant
(Petitioner),

v.                                                              S-19-0004

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Crook County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
>    Stacy M. Kirven, Kirven Law, LLC, Sheridan, Wyoming.

*Representing Appellee:*
>    Bridget Hill, Wyoming Attorney General; Michael J. McGrady, Deputy Attorney General; Kelly D. Mullen, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY**, Justice.

[¶1]   The Office of Administrative Hearings (OAH) denied Kenneth J. Bollinger's request for permanent partial disability benefits.  The hearing examiner determined Mr. Bollinger had not established "that because of his injury he is unable to return to employment at a wage of at least 95% of his monthly earnings at the time of his injury." Mr. Bollinger claims the hearing examiner's decision is not supported by the evidence, and the hearing examiner failed to consider undisputed evidence in favor of Mr. Bollinger's position.  Specifically, Mr. Bollinger claims the hearing examiner's decision failed to recognize that after a diligent job search, he remained unemployed.  We affirm.

## ISSUES

1.   Was the OAH decision to deny Mr. Bollinger permanent partial disability benefits supported by substantial evidence?

2.   Was the OAH decision to deny Mr. Bollinger permanent partial disability benefits arbitrary, capricious, or otherwise not in accordance with the law?

## FACTS

### A.   Procedural Background

[¶2]   On February 19, 2016, Mr. Bollinger, a boiler/kiln operator, injured his left arm while working at a lumber mill in Hulett, Wyoming.  At the time of his injury, he earned $16.50 per hour.

[¶3]   Mr. Bollinger filed a timely claim with the Workers' Compensation Division (the Division) and received temporary benefits on February 26, 2016.[1]  On March 17, 2017, the Division issued a determination letter awarding payments for a permanent partial impairment.  Mr. Bollinger then applied for permanent partial disability payments.  On July 10, 2017, the Division denied his claim because he had not submitted the required

---

[1] "'Temporary total disability' means that period of time an employee is temporarily and totally incapacitated from performing employment at any gainful employment or occupation for which he is reasonably suited by experience or training." Wyo. Stat. Ann. § 27-14-102(a)(xviii).  Temporary benefits generally do not continue longer than 24 months.  Wyo. Stat. Ann. § 27-14-404(a).  In most cases, temporary total disability benefits terminate when the worker fully recovers or qualifies for permanent partial impairment benefits, which may lead to permanent partial disability benefits, or permanent total disability benefits.  Wyo. Stat. Ann. § 27-14-404(c).

1

number of contacts to be deemed actively seeking work.[2]  Mr. Bollinger supplemented his application for benefits by listing thirteen additional documented work contacts.  On July 20, 2017, the Division again denied his claim because his information indicated he could "return to an occupation at a comparable wage" and therefore did not qualify for permanent partial disability benefits.

[¶4]    Mr. Bollinger objected to the Division's conclusion, and his claim was referred to the OAH for an evidentiary hearing.  The hearing was held on March 20, 2018.  Twenty-one days later, the hearing examiner issued the Findings of Fact, Conclusions of Law and Order.  The order denied benefits because Mr. Bollinger had "not met his burden of proof to establish that because of his injury he is unable to return to employment at a wage of at least 95% of his monthly earnings at the time of his injury."  Mr. Bollinger petitioned for judicial review of the hearing examiner's decision.  The district court found the hearing examiner's decision was supported by substantial evidence and affirmed.  Mr. Bollinger filed this timely appeal.

**B.      The Hearing Examiner's Findings of Fact, Conclusions of Law and Order**

[¶5]    The hearing examiner's order contained the following findings of fact: Mr. Bollinger is 63 years old and resides in Moorcroft, Wyoming.  He has a bachelor of science in aerospace engineering and worked for NASA for approximately 20 years.  While at NASA, he was a financial information processing assistant; an IT department manager; a web services manager; and he worked on numerous projects including the Voyager, Cassini, and Magellan expeditions.  In 2000, Mr. Bollinger moved to Wyoming where he has lived ever since.  He has worked in numerous occupations in Wyoming, including as a compliance officer, privacy officer, grant project analyst, and technical sales executive.  Mr. Bollinger also designed and operated an alternative energy company.

[¶6]    After the injury to his left arm, Mr. Bollinger participated in a permanent impairment evaluation where it was determined his injury resulted in an 11% upper

---

[2] To demonstrate a claimant is eligible for permanent partial disability benefits, he must show, by a preponderance of the evidence:

> (i)   The injured employee is **because of the injury, unable to return to employment** at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;
> (ii)  An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and
> (iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

Wyo. Stat. Ann. § 27-14-405(h)(i)–(iii) (LexisNexis 2019) (emphasis added).

extremity impairment which equaled a 7% whole person impairment. He is able to lift 20 pounds with his right hand but only five pounds with his left.[3] Given his physical limitations, a Functional Capacity Evaluation concluded Mr. Bollinger was able to perform in a medium capacity. His treating physician advised him he was able to return to some type of non-manual labor but could not return to his former job.

[¶7] Mr. Bollinger submitted applications to more than 50 qualifying jobs between April 18, 2017, and June 19, 2017. The jobs included: data science analyst, maintenance technician in electronics, operations manager, operations manager for aerospace components, certified medical coder, store manager, test and balance technician, senior computer technology business application analyst, engineering position, communications security, account executive, city administrator, and wind farm maintenance technician.

[¶8] Mr. Bollinger did not receive a response to any of his applications even though he testified he was mentally and physically qualified to perform all of the jobs listed in his job search. Although some of the positions paid less than $16 per hour, the "vast majority paid in excess of what he was earning at the time of his injury."

[¶9] Based on these facts, the hearing examiner determined Mr. Bollinger had not established that "because of his injury he [was] unable to return to employment at a wage of at least 95% of his monthly earnings at the time of his injury."

## *DISCUSSION*

### A.    Standard of Review

[¶10] "When we consider an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision." *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). "Instead, we review the case as if it had come directly to us from the administrative agency." *Id.* (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo. 2002)).

[¶11] Judicial review of agency decisions is governed by the Wyoming Administrative Procedure Act, Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2019), which provides in relevant part:

>    (c)  . . . The reviewing court shall:
>       (i) Compel agency action unlawfully withheld or unreasonably delayed; and

---

[3] Mr. Bollinger is right-handed.

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A)  Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

.    .    .

(E)  Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶12]  "[T]he substantial evidence standard will be applied any time we review an evidentiary ruling." *Dale*, ¶ 22, 188 P.3d at 561.  In *Baldwin*, we noted:

> If the hearing examiner determines that the burdened [claimant] failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

*In re Baldwin*, 2008 WY 125, ¶ 8, 196 P.3d 1087, 1090 (Wyo. 2008) (citation omitted). "[O]ur review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did." *Id.* (citation omitted).

[¶13]  "Even if an agency record contains sufficient evidence to support the administrative decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a 'safety net' to catch other agency action that may have violated the Wyoming Administrative Procedures Act." *Worker's Comp. Claim of Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 65, ¶ 19, 135 P.3d 568, 575 (Wyo. 2006) (quoting *Worker's Comp. Claim of Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, ¶ 24, 124 P.3d 686, 694 (Wyo. 2005)).  "Under the umbrella of arbitrary and capricious actions would fall potential mistakes such as inconsistent or incomplete findings of fact or any violation of due process." *Rodgers*, ¶ 19, 135 P.3d at 575 (quoting *Decker*, ¶ 24, 124 P.3d at 694).

I.     *Was the OAH decision to deny Mr. Bollinger permanent partial disability benefits supported by substantial evidence?*

[¶14]  It is undisputed Mr. Bollinger's claim was timely, and he actively sought work in compliance with the Division's rules.  The only issue at the hearing was whether he demonstrated that, because of his injury, he was unable to return to employment at 95% of his former monthly gross earnings.  Wyo. Stat. Ann. § 27-14-405(h).

4

[¶15]  Mr. Bollinger contends the evidence presented at the hearing demonstrated he met all of the statutory requirements.  Despite his efforts, he did not receive any responses from potential employers, let alone find employment.  He argues that, had he not been injured, he would still be working.  Because of his injury, he remains unemployed with no job prospects.  Therefore, he claims the hearing examiner erred in placing greater weight on his impressive resume, which indicated he theoretically *should* be able to find employment at a salary at 95% of his pre-injury wage.  Instead, Mr. Bollinger argues that the hearing examiner should have found dispositive the undisputed fact showing Mr. Bollinger applied for over 50 positions and still had no job at any wage.

[¶16]  "[A] worker suffers a loss of earning capacity when, because of his injury, he is deprived of his ability to rely upon prior work experience."  *Bonsell v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 114, ¶ 18, 142 P.3d 686, 691 (Wyo. 2006).  "[T]he focus of § 27-14-405(h) is on the injured employee's true ability to earn a living."  *Id.* ¶ 25, 142 P.3d at 692.

> In determining whether an employee has suffered a loss of earning capacity both medical and non-medical evidence may be relevant.  Although no individual factor is determinative, the following considerations are relevant to the loss of earning capacity inquiry: the employee's physical impairment, including the nature and extent of his injury; age; education; actual earnings, including pre-injury and post-injury earnings; ability to continue pre-injury employment; and post-injury employment prospects.

*Id.* ¶ 12, 142 P.3d at 689 (internal citations and quotation marks omitted); *see also Baldwin*, ¶ 15, 196 P.3d at 1092.

[¶17]  Mr. Bollinger argues our decision in *Bonsell* governs the analysis in this case.  There, Mr. Bonsell injured his back while working as a paint store manager.  *Bonsell*, ¶ 3, 142 P.3d at 687.  He applied for permanent partial disability benefits, and his vocational evaluation indicated he could return to an occupation comparable to his pre-injury employment.  *Id.* ¶ 5, 142 P.3d at 688.  Prior to his hearing before the OAH, Mr. Bonsell found a job which paid nearly the same wage as his paint store job.  *Id.*  However, the new job did not allow overtime, so he could not earn as much as he was earning when he was injured.  *Id.*  The hearing examiner determined Mr. Bonsell was eligible for benefits, but the district court reversed, concluding "[t]he record does not contain substantial evidence which connects [Mr. Bonsell's] wage reduction to his injury."  *Id.* ¶ 6, 142 P.3d at 688.

[¶18] On appeal, we reinstated the hearing examiner's decision. *Id.* ¶ 26, 142 P.3d at 692. We noted Mr. Bonsell had shown he could not return to his previous occupations because of the physical limitations caused by his injury and, "although [he had] a bachelor's degree in social sciences, there was no indication" he qualified for positions teaching or counseling children—jobs identified in the addendum to the evaluation. *Id.* ¶ 23, 142 P.3d at 692. We recognized the hearing examiner, as the finder of fact, was responsible for making the decision to give greater weight to Mr. Bonsell's actual employment rather than the vocational evaluation. *Id.* ¶ 24, 142 P.3d at 692. We concluded Mr. Bonsell established he was unable to find a better-paying job given the physical limitations resulting from his injury, and therefore, the district court erred in substituting its judgment for that of the hearing examiner. *Id.* ¶ 26, 142 P.3d at 692.

[¶19] Mr. Bollinger argues *Bonsell* stands for the proposition that, once a claimant has conducted a diligent job search without response from any employer, his inability to secure employment reflects his "**true** ability to earn a living," as opposed to theoretical jobs "he could **possibly** obtain." According to Mr. Bollinger, nothing in Wyo. Stat. Ann. § 27-14-405(h) requires him "to prove [his] applications were **rejected** because of his injury"; he is required only to prove his injury caused his inability to return to employment at "95% of his monthly earnings at the time of his injury." Mr. Bollinger also argues he was unable to find any employment after his injury despite his efforts, the hearing examiner erred in relying on speculative available employment and ignoring his true ability to earn a living.

[¶20] Our standard of review requires us to affirm the hearing examiner's decision "unless it is clearly contrary to the overwhelming weight of the evidence on record." *Dale*, ¶ 11, 188 P.3d at 558–59 (quoting *Newman*, ¶ 26, 49 P.3d at 173). We therefore review the record evidence supporting the factors relevant to whether there has been a loss of earning capacity as set forth in *Bonsell*, ¶ 12, 142 P.3d at 689, and *Baldwin*, ¶ 15, 196 P.3d at 1092.

[¶21] The hearing examiner considered the nature and extent of Mr. Bollinger's physical injury and recognized Mr. Bollinger suffered a 7% whole person impairment and was limited in his ability to lift certain weight. Mr. Bollinger is 63 years old and has a bachelor of science in aerospace engineering. He cannot return to his former job.

[¶22] However, Mr. Bollinger's ability to continue pre-injury employment is markedly different from that of Mr. Bonsell's. Mr. Bollinger's pre-injury employment includes numerous jobs that did not require a high degree of physical lifting. Since coming to Wyoming, his jobs have included compliance officer, grant project analyst, and technical sales executive. Mr. Bollinger's extensive pre-injury employment experience distinguishes his situation from Mr. Bonsell whose pre-injury work history included only two physical jobs. Based on Mr. Bollinger's educational background and proven employment history, there are a variety of positions available for which he is qualified.

Mr. Bollinger applied for a wide array of jobs, and most of these jobs paid more than Mr. Bollinger earned at the time of his injury.

[¶23] Mr. Bollinger's extensive work history and experience in jobs he is qualified for and capable of doing without regard to his impairment, the number of suitable jobs available during the time of his job search, and the pay level of those jobs are sufficient to support the hearing examiner's conclusion. Mr. Bollinger did not establish he was unable to return to work because of his injury. This decision was not contrary to the overwhelming weight of the evidence, and the district court did not err in affirming the hearing examiner's conclusion.

## II. Was the OAH decision to deny Mr. Bollinger permanent partial disability benefits arbitrary, capricious, or otherwise not in accordance with the law?

[¶24] Mr. Bollinger contends the hearing examiner failed to appropriately address the factors outlined in *Bonsell* and *Baldwin*. Essentially, Mr. Bollinger argues the hearing examiner arbitrarily ignored his actual earnings and his post-injury prospects. He claims that had the hearing examiner carefully evaluated his case using these factors, the hearing examiner "would have no choice but to reach a different conclusion." We disagree.

[¶25] Actions that fall "[u]nder the umbrella of arbitrary and capricious" are "potential mistakes such as inconsistent or incomplete findings of fact or any violation of due process." *Rodgers*, ¶ 19, 135 P.3d at 575 (quoting *Decker*, ¶ 24, 124 P.3d at 694). "An agency must make findings of basic fact on all material issues before it and upon which ultimate findings of fact or conclusions are based in order to enable the reviewing court to determine whether evidence was considered on a reasonable and proper basis." *Rodgers*, ¶ 36, 135 P.3d at 580–81. The record demonstrates the hearing examiner considered the evidence presented by Mr. Bollinger and did not act arbitrarily in reading the result. *See supra* ¶ 23.

### CONCLUSION

[¶26] The OAH decision set forth substantial findings of fact and conclusions of law. Based on a reasonable evaluation of all the evidence presented, the hearing examiner determined Mr. Bollinger's injury was not the cause of his inability to return to employment. The decision was not arbitrary or capricious. We will not substitute our judgment for that of the hearing examiner and we affirm.